No. 1,662.

## KEELEY BREWING COMPANY v. PARNIN.

PLEADING. — *Complaint.* — *Damages from Fright of Horse on Highway.*—*Roadworthy Horse.*—*Contributory Negligence.*—In an action for damages for injuries sustained by reason of the fright of plaintiff's horse on the highway, caused by the negligent act of defendant, the complaint is sufficient which shows a duty owing plaintiff and charges negligence on the part of defendant amounting to breach thereof, but does not aver in direct terms that the horse plaintiff was driving was an ordinary gentle horse, but does charge that the injury was caused "without any fault or negligence on the part of the plaintiff."

INTERROGATORIES TO JURY.—*General Verdict.*—*Irreconcilable Conflict.*—*Construction.*—*Intendment.*—In determining whether or not there is an irreconcilable conflict between the general verdict and the answers to interrogatories, the general verdict must be liberally construed and every reasonable and fair intendment indulged to uphold it; while answers to interrogatories must be strictly construed and unaided by intendment.

SAME.—*Improper Ones Submitted.*—*Unavailable.*—If improper interrogatories be submitted, answers thereto cannot be considered for any purpose.

SAME.—*Improper Ones.*—Interrogatories asking for the opinion of the jury upon matters of law are improper.

SAME.—*Irreconcilable Conflict with General Verdict.*—*Highway.*—*Frightened Horse.*—*Damages.*—Where, in an action for damages from fright of plaintiff's horse in a highway, the interrogatory, "Were not the kegs which frightened the plaintiff's horse, and the manner in which they were thrown, naturally *calculated* to frighten said horse?" is answered in the negative, an essential part of plaintiff's right of action is wanting, and the plaintiff cannot recover.

HIGHWAY.—*Damage from Fright of Horse.*—*Liability.*—A person who brings an object upon, or does an act upon, a highway that is likely to frighten a horse of ordinary gentleness, is guilty of negligence; and if a person bring an object upon, or do an act upon, a highway with the design, intention or purpose of frightening horses, he is guilty of a positive and aggressive wrong and is liable for the injury resulting, no matter what the character of the horse may be.

From the Allen Circuit Court.

*W. P. Breen* and *J. Morris, Jr.,* for appellant.

*W. G. Colerick* and *W. E. Colerick,* for appellee.

LOTZ, J.—The appellee, plaintiff below, while traveling upon a highway in Allen county, was thrown from the vehicle in which he was riding, and sustained injuries to his person. The injuries were caused by his horse becoming frightened at a beer keg thrown upon the highway by the appellant's servant. This action was brought to recover damages for the injuries sustained, alleging negligence on the part of the appellant. The cause was tried by a jury, which returned a general verdict for appellee in the sum of $2,500.00, on which judgment was rendered.

The first assignment of error calls in question the sufficiency of the complaint to withstand appellant's demurrer for want of facts.

The substantial averments of the complaint are, that on the 9th day of August, 1893, the plaintiff was traveling on and along a public highway in a buggy drawn by a horse; that on said day the defendant was engaged in vending and delivering beer and other malt liquors; that situated along the highway, and within about fifty feet thereof, was a building used by the defendant in its business, as a saloon; that when the plaintiff reached a point in the highway opposite the building, the defendant, by one of its servants who was in the building, "carelessly and negligently threw from the cellar of said building, into and upon said highway, in front of said horse, an empty beer keg, which frightened said horse, and caused it to become unmanageable and run away, upsetting said buggy, and hurling therefrom the plaintiff to and on the ground and against a fence, which resulted in inflicting upon his person many serious injuries as hereinafter stated; that said injuries were

caused by the carelessness and negligence of said ser-
vant, who then was in the employment of the defend-
ant, and in the performance of his duties as such ser-
vant, and without any fault or negligence on the part
of the plaintiff ; that said beer keg so thrown, and as
thrown, was well calculated to, and did frighten said
horse.''

The appellant assails this complaint with much vigor,
asserting that it does not appear from the averments
that the defendant owed the plaintiff any duty which
the defendant failed to perform ; that it nowhere ap-
pears from the averments that the horse which the plain-
tiff was driving was a road-worthy horse, or one of or-
dinary gentleness.

The principal and primary purpose of the ordinary
highways is to afford the people of the State a means of
inter-communication, and of passing from place to place.
They are specially designed for passage and travel. But
this is not the sole and exclusive purpose for which they
may be used. They may be lawfully used for many
other purposes, provided such uses do no materially in-
terfere with the primary purpose. The right of the pub-
lic to the use of the highways is subject to reasonable
and necessary limitations. The improvement of the
highways themselves ; the improvement of abutting
lots, by digging cellars and the erection of buildings ;
their use for the carriage and delivery of grain, fuel
and other goods ; the loading and unloading of the same
thereon, are legitimate uses of the highways, although
such use may result in a temporary obstruction to the
travel. Beach Pub. Corp., section 1230 ; Dill Munic.
Corp., section 730.

The defendant had the right to use the highway for
the purpose of loading and unloading its beer kegs, but
the plaintiff's right to travel thereon was the superior

right.   Neither will be permitted to abuse the privilege which the law gives.   It is the duty of a traveler upon a highway to take into consideration the rights of his fellow travelers and the right of others to use it for purposes other than for travel, and to conform to those usages and customs which have grown up with that stage of civilization and commerce of the country through which they are constructed.   The person using a highway for other purposes than travel is in duty bound to conform to the rights of the traveling public. A violation of these duties may constitute negligence and lead to legal liability.   There is no rule of law that forbids a person from traveling on a highway with a skittish or ill-broken horse, but if he do so he may be liable for the injuries resulting therefrom.   Nor is there any fixed rule as to what objects a person may bring upon, or what acts he may do upon, a highway.   But there are objects and acts which have a tendency to frighten horses.   The frightening of horses is governed by no fixed rule.   A gentle horse will sometimes become frightened at a very insignificant object or act which a skittish horse may pass unnoticed.   It is, however, a well known fact that there are objects, acts and sounds that have a natural tendency to frighten all horses, the gentle as well as the skittish.   If a person bring such an object upon, or do such an act on, a highway, he will violate a duty he owes to the traveling public, and be guilty of negligence.   It does not follow that because he is negligent he is liable.   The person injured may also be in fault.   If the latter be traveling with a skittish or untrustworthy horse, there are instances in which he will be deemed to have assumed the risk or contributed to his own injury ; for although the object or act done may have had a tendency or was likely to frighten any kind of a horse, and although both a gen-

tle horse and a skittish horse might have passed the object or act without becoming frightened, still there is much more probability that a skittish horse would become frightened than a gentle and well trained one.

It is for these reasons that in order to make the complaint good it should aver, either specially or in equivalent general terms, that the object or act done had a tendency to, or was likely to, frighten a horse of ordinary gentleness. In other words, the complaint must aver negligence on the part of the defendant and negative contributory negligence on the part of the plaintiff. *Town of Rushville* v. *Adams*, 107 Ind. 475; Elliott. Roads and Streets, pp. 448, 449; *Piollet* v. *Summers*, 106 Pa. St. 95; *Pittsburgh, etc., R. W. Co.* v. *Taylor*, 104 Pa. St. 306. If the obstruction or act be one that a person has no right to do or make at all, then there may be a liability, even though the horse be not one of ordinary gentleness. *Ohio, etc., R. W. Co.* v. *Trowbridge*, 126 Ind. 391. But no question of that kind is presented here.

The complaint before us does charge negligence on the part of the defendant, but it does not aver in direct terms that the horse the plaintiff was driving was an ordinarily gentle horse. It does charge, however, that the injury was caused "without any fault or negligence on the part of the plaintiff." It has often been decided that contributory negligence may be negatived by a general averment. *Lake Erie, etc., R. R. Co.* v. *Griffin*, 8 Ind. App. 47; *Chicago, etc., R. R. Co.* v. *Barnes*, 2 Ind. App. 213. There was no error in overruling the demurrer to the complaint.

The jury with their general verdict returned answers to interrogatories. The appellant moved for a judgment in its favor on these answers. This motion was overruled. This ruling is one of the errors assigned.

The interrogatories and answers essential for the consideration of this assignment are as follows :

"1. Was not the plaintiff injured on the 9th day of August, 1893, in the manner and by reason of the causes stated in his complaint in this action ? Ans. Yes.

"2. .Were not the injuries which the plaintiff received caused by the negligence of a servant of the defendant, as stated in the complaint in this action ? Ans. Yes.

"3. Were not the plaintiff's injuries received by him without any fault or negligence on his part? Ans. Yes ; not his fault.

"4. Was not the horse that plaintiff was driving at the time he received the injuries of which he complains, of ordinary gentleness? Ans. Yes ; he was.

"5. Were not the kegs which frightened the plaintiff's horse, and the manner in which they were thrown, naturally calculated to frighten said horse ? Ans. No ; but they did."

The undisputed evidence shows that two kegs were thrown, both of which frightened the horse, the second one causing it to run away.

It is settled by many decisions, that a general verdict of necessity covers the whole case. It includes the facts proved and the law as applied to them. It determines every material fact against the unsuccessful party. Answers to proper interrogatories only determine special questions of fact. One of the purposes of interrogatories is to test the correctness of the general verdict; to determine whether or not the jury have correctly applied the law to the facts proved. If the general verdict be for the plaintiff and the existence of a certain fact be essential to the right of action, and should the jury in answer to interrogatories find that the fact does

not exist, then it is apparent that there is an irreconcilable conflict. It is clear under such conditions, that the general verdict is wrong. It is overthrown and destroyed by the special finding. In determining whether or not there is an irreconcilable conflict, certain rules of construction must be borne in mind. The general verdict must be liberally construed, and every reasonable and fair intendment indulged to uphold it. Whilst answers to interrogatories must be strictly construed and unaided by intendment, improper interrogatories should not be submitted; but if they should be, the answers cannot be considered for any purpose. Thus, if an interrogatory ask for an immaterial fact, or for a matter of law, its answer will have no weight in overthrowing the general verdict. If the answers should be inconsistent with each other, or contradictory and uncertain in their meaning, they may neutralize and destroy each other, but they will not be permitted to control the general verdict. In one case, it is held that the answers will not control, unless they constitute an insurmountable barrier to a recovery, and are so antagonistic as to preclude reconciliation, *Ohio, etc., R. W. Co.* v. *Trowbridge, supra.* In another it is said, "they override the general verdict only when both cannot stand together, the antagonism being such, upon the face of the record, as is beyond possibility of being removed by any evidence legitimately admissible under the issues in the case." In another case, it is held that the general verdict must stand, unless the facts found in answer to the interrogatories are utterly destructive of it. *Kirkpatrick* v. *Reeves,* 121 Ind. 280.

This court in *Grand Rapids, etc., R. R. Co.* v. *Cox,* 8 Ind. App. 29, said: "It is only when the answers to the interrogatories are absolutely irreconcilable with the

general verdict, that the general verdict will be controlled by them."

And in *Evansville, etc., R. R. Co.* v. *Marohn*, 6 Ind. App. 646, this language is used : "Before the general verdict will yield to the special findings, they must so antagonize each other, that by no reasonable hypothesis can they be reconciled. It is then, and then only, that the findings control." See also, *Shuck* v. *State ex rel.*, 136 Ind. 63 ; *Bedford* v. *Spilman*, 11 Ind. App. 684.

The appellee's learned counsel invoke the above rules and vigorously insist upon their enforcement in this case. It is contended, that it is possible to reconcile the answers to the interrogatories with the general verdict, and that such reconciliation is based upon a reasonable hypothesis.

Interrogatory number one is somewhat general in its character. If the "causes" referred to be construed to mean the breach of duty which the appellant owed the appellee, or the negligence charged, then the interrogatory was improper, and its answer cannot be considered. But if the word "causes" be construed to mean the throwing of the beer keg, the fright of the horse, and the hurling of the plaintiff to the ground and against the fence, then it was proper, and its answer is not in conflict, but in harmony with the general verdict. We are inclined to give it the latter construction.

Interrogatories two and three ask for the opinion of the jury upon matters of law. They are improper and should not have been given. Their answers cannot be considered either for the purpose of sustaining or overthrowing the general verdict. *Louisville, etc., R. W. Co.* v *Pedigo*, 108 Ind. 481.

Interrogatory four asked for a pertinent and material fact, and its answer tends to support the general ver-

dict for the character of the horse was a material element in plaintiff's case.

Interrogatory five was also pertinent and proper, for whether or not the beer keg and the manner in which it was thrown were likely to frighten the plaintiff's horse were important facts in the case.

By this interrogatory and answer it is disclosed that although the beer keg and the manner in which it was thrown did frighten plaintiff's horse they were not naturally calculated to have that effect. If it was necessary to aver that the keg and the manner in which it was thrown were apt to or naturally liable or were intended or calculated to frighten a horse of ordinary gentleness, it was also necessary to prove it.

It is averred in the complaint that the "beer keg so thrown and as thrown was well calculated to and did frighten said horse." The interrogatory asks whether or not the beer kegs and the manner in which they were thrown were calculated to frighten the horse. The word "calculated" is used in both the complaint and the interrogatory. Being used by the same party on the same occasion and in reference to the same matter the presumption would be that they were used in the same sense, and that the jury attached the same meaning to the word in the interrogatory as that applied to it in the complaint. The use of the word "calculate" in the sense of likely, apt or liable to, is perhaps permissible under the precedents, but such use is not to be commended. Calculate primarily means to compute mathematically. It implies the power to think, to study, and to reason. It is usually applied to sentient beings, those having the faculty of sensation, the power to perceive, reason and think. As a provincialism it is sometimes used in the sense of to intend, to design, to plan or to purpose.

Whenever a thing or object is so constituted by nature as to be likely to produce a given effect, it may be said to have an aptitude or inclination to that end, and this is the condition the law required the appellant to guard against.

In whatever sense the word was used in the complaint, it was, we think, used in the same sense in the interrogatory. If it means to intend, to design, to plan, or to purpose in the complaint, it means the same in the interrogatory. If it means having an aptitude or inclination in the complaint, it means the same in the interrogatory. If it was not necessary to aver that an object or thing had a natural tendency to frighten a roadworthy horse, then the answer to the interrogatory would not conflict with the general verdict, for the jury would not necessarily give it any meaning in the complaint. Was it necessary to make such averments? In *Town of Rushville* v. *Adams, supra,* in speaking of the sufficiency of the complaint, this language is used: "In order to render the corporation (the defendant) liable in such cases, it must in some way be made to appear that the object or obstruction was one naturally calculated to frighten horses of ordinary gentleness, and that the horse frightened was one of such a character."

In *Cleveland, etc., R. W. Co.* v. *Wynant,* 114 Ind. 525, it is said: "It is not, therefore,. a subject to be pleaded and proved whether a box car or any other particular object is naturally calculated to frighten horses. This is to be determined by the experience, observation and intelligence of the court and jury, as applied to all the facts of the particular case before them." This language was used by the learned judge who wrote the opinion, not on a question of the sufficiency of the complaint, but on a question of the admissibility of evidence.

Nor was there anything in the question under consideration that required such statement. The sufficiency of a pleading was not the point in judgment. The language quoted was not necessary to be used in deciding the questions before the court in that case. This language was mere *obiter dictum* and cannot be controlling here. It is possible that the statement quoted states the law correctly as applied to the facts of that case. If there be a permanent obstruction of a highway, such as to constitute a nuisance, it may be there is a liability, irrespective of its character or of the character of the horse frightened. But in the case in hearing the appellant was doing an act upon the highway, loading beer kegs, which it might lawfully do. It was only required to do it in a careful manner. We think the weight of authority is to the effect that in a case like the one at bar a person who brings an object upon or does an act upon the highway, that is likely to frighten a horse of ordinary gentleness, is guilty of negligence; and that if a person bring an object upon or do an act upon the highway with the design, intention, or purpose of frightening horses, he is guilty of a positive and aggressive wrong, and liable for the injury resulting, no matter what the character of the horse may be. In either case it is necessary to aver the breach of duty generally or specifically. If the word "calculated," as used in the complaint and interrogatory, be considered in the sense of likely or apt, there is a fatal conflict between the answer and the general verdict. If it be considered in the sense of designed or purposed, there is also a fatal conflict.

It is true, as appellee's counsel urge, that it is possible to reconcile the answer to the interrogatory with the general verdict by saying that the word "calculated" was used in the sense of likely or apt in the complaint

Keeley Brewing Company v. Parnin.

and in the sense of intended or purposed in the interrogatory, but such a reconciliation would not be a reasonable one. It was necessary that the jury give the word a meaning in arriving at their general verdict, and necessary to give it a meaning in the answer to the interrogatory. To say that the jury gave it one meaning in the complaint and another and entirely different meaning in the interrogatory, when both related to the same thing and the word was apparently used in the same sense, would be trifling with the forms of justice.

By the answer to the interrogatory it is apparent that an essential part is wanting to establish the appellee's right of action. In view of the character of the evidence upon this proposition, we do not feel justified in ordering judgment on the answer to the interrogatory, but believe that the ends of justice will be subserved by directing a new trial.

Judgment reversed, with instructions to grant a new trial to appellee, if asked for within ninety days, otherwise to render judgment on the answers to the interrogatory.

Filed September 27, 1895; petition for rehearing overruled November 22, 1895.

## SEPARATE OPINION.

DAVIS, J.—In my opinion, so far as the pleading is concerned, it was not necessary to allege that the negligent act which is charged as the proximate cause of the injury was calculated to cause the injury. Under the circumstances disclosed by the complaint, where it is made to appear that the injuries sustained were the proximate result of the negligent act of the defendant, the complaint on that question is sufficient. When one violates a duty he owes another, he is liable for all the probable results of his negligent act; and, therefore,

where it clearly appears that the result was one that was improbable, the circumstances may be such as to defeat the action.

Filed September 27, 1895.