## AURELIUS *v.* LAKE ERIE AND WESTERN RAILROAD COMPANY.

[No. 2,382.    Filed March 16, 1898.]

RAILROADS.—*Negligence.*—A railroad company is guilty of negligence in running a locomotive and train of cars across a public street in a populous city without sounding the whistle or ringing the bell, or giving any warning of its approach.    *p. 587.*

CONTRIBUTORY NEGLIGENCE.—*Railroad Crossing.*—Facts found by a special verdict in the trial of an action for personal injuries received by plaintiff at a railroad crossing, that plaintiff stopped and looked for the approach of a train when within 270 feet of the track, and again when within 60 feet of the track, but at such times the view was obstructed by trees and buildings, and which shows that if plaintiff had stopped and looked when within 25 feet of the track, she could have seen the train approaching at a distance of 700 or 800 feet, but that she neither looked nor listened, show plaintiff guilty of such negligence contributing to her injury as to prevent a recovery. *pp. 587-589.*

PRACTICE.—*Interrogatories to Jury.*—No error was committed in refusing to submit an interrogatory to the jury which was wholly immaterial to the issue.    *p. 595.*

APPEAL AND ERROR.—*Refusal of Court to Submit Interrogatories to Jury.*—The refusal of the court to submit interrogatories to the jury tendered by appellant cannot be assigned as error on appeal without having been first assigned as a cause for a new trial in a motion therefor.    *pp. 595, 596.*

From the Henry Circuit Court.    *Affirmed.*

*M. E. Forkner* and *Goodykoonts & Ballard,* for appellant.

*John B. Cockrum, W. E. Hackedorn* and *William A. Brown,* for appellee.

WILEY, J.—Appellant was plaintiff below, and prosecuted this action against appellee for injuries received by her by one of appellee's trains colliding with a buggy in which she was riding.    She was in a buggy belonging to and being driven by one Dr. Edwins, and was on her way with him to procure some medicine for a member of her father's family.

He had made a professional call at her father's, and she was accompanying him for the purpose of getting the medicine and carrying it home.   She was a minor, being about nineteen years old, and resided with her father in the city of Elwood, and upon application to the court she was permitted to prosecute the action as a poor person.   The main track of appellee's road passes through the city of Elwood, running due east and west.   Anderson street, in said city, is fifty feet wide, running north and south, and crosses appellee's road at right angles.   Elwood is a regular station on said road and all passengers trains are scheduled to stop there.

Appellant and Dr. Edwins were driving north on said street.   A regular passenger train from the west, on appellee's road was scheduled to arrive at Elwood at nine fifteen o'clock a. m., on the day of the accident, but was five minutes late.   Immediately east of said street and adjoining appellee's right of way on the north, in the angle caused by the crossing of the street, appellee maintained its passenger station and depot.   In the southwest angle caused by the intersection of the railroad and said street, there was a one story building standing about twenty feet south of the track and about twelve or fifteen feet west of the street, used as a photograph gallery.   South from said point said street was built up with buildings and structures, and trees were growing along the sidewalk and upon private grounds so as to obstruct the view and hearing of trains approaching from the west.

The negligence complained of was the alleged careless colliding of appellee's train with the buggy in which she was riding.   The complaint is in two paragraphs, but as no question is presented as to the sufficiency of the complaint, it is not necessary to refer to it at any length.   It is enough to say that it is

charged that appellee's servants in charge of the train, approached said street crossing at a high and dangerous rate of speed, and did not give any signal or warning of its approach by sounding the whistle and ringing the bell.    In addition to the general averments of negligence, the second paragraph charges that the engineer in charge of the engine drawing the train, saw appellant's perilous and dangerous position in time to have reversed his engine, and averted the injury, but failed to do so; but upon this point the controversy is put at rest by the express finding of the jury to the contrary.    The complaint contains the averment that the appellant and Dr. Edwins, when approaching the crossing, stopped and listened to ascertain if any train was approaching; that they were both in possession of the senses of sight and hearing; that again within about sixty-five feet of the track, Dr. Edwins again checked his horse and stopped, and he and appellant carefully looked and listened, but they did not see or hear any train, and that they started to cross the track when the injury occurred.    The complaint contains the necessary averment that the injury resulted without any fault or negligence of appellant or of Dr. Edwins.

The appellee answered by general denial, trial by jury, and a special verdict returned.    Each of the parties moved for judgment on the verdict.    Appellant's motion was overruled and appellee's sustained.    The record shows that appellant tendered certain interrogatories to the court, which she requested the court to submit to the jury as a part of the special verdict, which it refused to do, and embodied the same in a bill of exceptions.    The rulings of the court on the respective motions for judgment, and its refusal to submit the interrogatories tendered, are assigned as errors.

The negligence charged against the appellee is fully sustained by the verdict. It is shown that Elwood is a populous city, and that in approaching the crossing at Anderson street, appellee's servants did not give the signals as required by statute, and no warning whatever, except to whistle for the station, about half a mile west of it. The verdict shows that when the train approached the crossing it was running about eight miles an hour. It is unnecessary to set out the facts as found in the verdict, touching the negligence of the appellee, further than to say that to run a locomotive and train of cars across a public street in a populous city without sounding the whistle or ringing the bell, and without giving any warning of its approach, is negligence on the part of those operating the train, and this is what the verdict shows was done. See *Lake Shore, etc., R. W. Co.* v. *Boyts*, 16 Ind. App. 640, and cases there cited.

On the question of appellant's freedom from negligence the pivitol facts as found by the jury, reduced to narrative form, are as follows: That the plaintiff's mother sent her with Dr. Edwins to get some medicine for her sick brother; that she was riding with him in a top buggy with the top up and the curtains on; the horse and buggy were the property of Dr. Edwins; that the horse was a spirited animal, afraid of cars, and that Dr. Edwins was a prudent, safe, and skilful driver; that the appellant and Dr. Edwins were both possessed with good hearing and eyesight; that they drove onto Anderson street from D street, which runs east and west; that Anderson street runs north and south; that when they turned into Anderson street, at a point about 270 feet south of the railway track, they stopped the horse and looked and listened for a train; that after they so stopped, they drove on toward the railway in a trot, without stopping, looking or

listening, until they reached a point twenty feet south of a photograph gallery which stood on the west side of Anderson street, the south side of which was about forty-four feet from the center of the track, and which stood about twenty-two feet west of the west line of said street; that at the latter point, being about sixty-five feet south of the track, they again stopped, looked and listened, but did not see or hear a train; that appellant was well acquainted with the comparative location of Anderson street and the railway where they crossed and the territory and surroundings thereof; that along Anderson street, on the west side thereof, and opposite to where appellant was riding, there were houses, buildings, and trees, which obstructed the view of trains approaching from the west, and that appellant was familiar with such obstructions; that on account of such obstructions appellant could not see a train approaching from the west; that the appellant did not stop twenty-five feet south of the track to look and listen for a train, and that if she had so stopped, she could, if she had looked, have seen the train approaching from the west 700 or 800 feet; that she did not request Dr. Edwins to stop within twenty-five feet of the track; that if she had stopped within twenty feet of the track, and looked she could have seen a train approaching from the west about 12,000 feet; that she did not request Dr. Edwins to stop within said distance, and that she did not request him to stop the buggy at any point on Anderson street where it was possible for her to see or hear the approaching train, nor say anything to him about stopping it; that she was about nineteen years old, of average intelligence, education, and capacity, with good eyesight and hearing; that if she had stopped, listened, and looked within twenty-five feet of the track as she was approaching it, she could have

heard and seen the train in time to have avoided the accident; that the train was running about eight miles an hour; that said train was due to arrive at the station at 9:15 a. m., but did not arrive until 9:20 a. m.; that as she was approaching the track, appellee's station was in plain view, and a number of persons were standing on the platform gesticulating, and were endeavoring by signs and motions to warn her of the impending danger, and that she could have seen them so gesticulating, etc., if she had looked; that appellant was driving about five miles per hour as she approached the track; that when appellant and Dr. Edwins were within twenty-five feet of the track, the train was about forty-five feet west of Anderson street; that if she had stopped within twenty feet of the track she could have heard the train, if she had listened; that at said point there were no obstructions to prevent seeing a train aproaching from the west for a distance of 12,000 feet; that immediately before the accident appellant was looking neither to the east or west for an approaching train; that she did not look to the west at any time after she reached a point where the train could have been seen; that after appellant and Dr. Edwins had stopped in front of the photograph gallery as above described, the Doctor proceeded to drive toward appellee's railroad track in a "jog-trot." The jury further found that appellant did not have any control over the horse while she was riding with Dr. Edwins.  Upon these facts, the trial court declared the law to be with the appellee, and rendered judgment in its favor for costs.

As a question of law upon these facts, the appellant was, in our judgment, clearly guilty of such negligence, contributing to her injury, as to preclude her recovery, and upon this question the law in this jurisdiction is well settled.

The rule announced in *Hathaway* v. *Toledo, etc., R. W. Co.*, 46 Ind. 25, was that: "When a person crossing a railroad track is injured by a collision with train, the fault is, *prima facie*, his own, and he must show affirmatively, that his fault or negligence did not contribute to the injury, before he is entitled to recover for such injury." And to this rule the courts of last resort in this State have uniformly adhered. *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31; *Lake Erie, etc., R. R. Co.* v. *Stick*, 143 Ind. 449; *Cincinnati, etc., R. W. Co.* v. *Duncan*, 143 Ind. 524; *Smith* v. *Wabash R. R. Co.*, 141 Ind. 92; *Shirk* v. *Wabash R. R. Co.*, 14 Ind. App. 126; *Lake Shore, etc., R. W. Co.* v. *Boyts*, *supra*.

The verdict shows that there were some obstructions, buildings, and trees, on the west side of Anderson street, which obstructed the view, and prevented appellant from seeing the train as it approached till she reached a point within twenty-five feet of the track, where, by looking to the west, she could see along the track a distance of 700 or 800 feet. It further shows that she was riding in a covered buggy, with the top up and curtains on, so that the only opening through which she could see was immediately in front.

The fact of these obstructions, and the covered buggy imposed upon her the duty of increased care in the use of her senses of sight and hearing. Beach Contrib. Neg. (2nd ed.), section 183; *Lake Shore, etc., R. W. Co.* v. *Boyts, supra*.

A person when in a place, or while approaching a place of danger, must use care and caution commensurate to such danger; and where one aproaches a point where a highway crosses a railroad track on the same level, it is his duty to proceed with caution, and, if he attempts to cross the track, either on foot or in

a vehicle, he must use ordinary care, under the circumstances, in so doing.   He must assume that there is danger and act with ordinary care and prudence upon that assumption.

As was said by Monks, J., in *Smith* v. *Wabash R. R. Co., supra:* "The question of care at railway crossings as affecting the traveler, is no longer, as a rule, a question for the jury.   The *quantum* of care in a large class of cases is exactly prescribed as a matter of law.

"In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively both ways for approaching trains, if the surroundings are such as to admit of that precaution. If a traveler by looking could have seen an approaching train in time to avoid injury, it will be presumed in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw, such conduct is negligence *per se.*"   See, also, *Cincinnati, etc., R. W. Co.* v. *Duncan, supra; Ohio, etc., R. W. Co.* v. *Hill,* 117 Ind. 56; Beach Contrib. Neg. (2nd ed.), sections 180, 181, and cases cited; *Lake Shore, etc., R. W. Co.* v. *Boyts, supra; Towers* v. *Lake Erie, etc., R. R. Co.,* 18 Ind. App. 684.   This principle and these cases (and many more might be cited) are, it seems to us, decisive here.

The verdict in this case affirmatively shows that appellant stopped and listened for a train when she first turned into Anderson street, and again when she was within about sixty-five feet of the crossing.   At each of these places it was impossible to see a train approaching from the west on account of obstructions. After the last stop, Dr. Edwins, the person with whom she was riding, proceeded to drive across the track, in a "jog-trot," and she neither looked to the right nor to the left.   It is further shown that at a point within twenty-five feet of the crossing, she had an unob-

structed view westward along appellee's track for a distance of 700 or 800 feet, and, that if she had looked, she could have seen the approaching train in time to have avoided the injury. Interrogatories 43 and 45 and the answers thereto are as follows: "43. From a point 25 feet south of the railroad on Anderson street, how far could a train be seen approaching from the west on defendant's road? Ans. 700 or 800 feet." "45. If the plaintiff had stopped and looked west along said railroad, when at a point 25 feet south of the railroad, could she have seen said train in time to have avoided collision therewith? Ans. Yes."

The verdict also shows that from ten to twenty-five persons were standing on the platform at appellee's station, in plain and full view of appellant, and many of them gesticulating, motioning, etc., to warn her of danger; but she seemed to be oblivious to all this.

The fact that it was about the time for a train to arrive at that station, and many persons standing on the platform, and she being familiar with the surroundings and anticipating danger, was enough to warn her. The language of Monks, J., in *Smith* v. *Wabash R. R. Co., supra,* applies to the facts here with significant force. Such facts bring the case squarely within the rule announced there. The appellant, by looking, could have seen the train in time to avoid the injury, and as she was injured we must presume, either that she did not look, or if she did look, she did not heed what she saw. Such conduct was negligence *per se.*

The case before us, is, upon the facts, much stronger than that of the *Lake Shore, etc., R. W. Co.* v. *Boyts, supra.* In that case if appellee had looked southward when within thirty feet of the nearest rail, he would have had an unobstructed view of the side-track, upon

which a freight train was backing, for a distance of sixty feet.  Here appellant would have had an unobstructed view of the main track of appellee's road, upon which a passenger train was approaching, for a distance of 700 or 800 feet, if she had looked westward when at a point within twenty-five feet of the track. She must have known, and we must presume she did know, this fact, for the verdict shows that she was familiar with the crossing and its surroundings. *Lake Shore, etc., R. W. Co.* v. *Boyts, supra.*

In *Mann* v. *Belt R. R., etc., Co.*, 128 Ind. 138, the court said:  "When it is said that a person approaching a railroad crossing must look and listen attentively for approaching trains, it is not to be understood that he may look from a given point, and then close his eyes; but it must be understood that he must exercise such care as a reasonably prudent person, in the presence of such danger, would exercise to avoid injury."  In other words, a person approaching a railroad crossing, in order to avoid injury, must exercise continuing care and caution until the danger is past.

In *Cadwallader* v. *Louisville, etc., R. R. Co.*, 128 Ind. 518, appellee kept a watchman at a crossing to warn travelers.  Appellant approached the crossing, but the watchman gave her no notice that a train was approaching.  She did not look for approaching trains, but looked at the watchman.  She had good hearing and eyesight, and when within twenty feet of the crossing she had an unobstructed view of the track for 100 feet north, and when within ten feet of the track she had such view for 300 feet, and could have seen the approaching train before she stepped on the track if she had looked.  Notwithstanding these facts, she heedlessly stepped upon the track in front of a moving train and was injured.  It was held she could not re-

cover on account of her own negligence contributing to her injury.

It seems to us that the question that we are now considering is so firmly fixed in our jurisprudence as to be free from doubt or conjecture, and a further discussion and citation of authorities are wholly useless.

It is contended by appellant, and conceded by appellee, that the negligence of Dr. Edwins, with whom she was riding, cannot be imputed to her. We need not discuss this proposition, because it affirmatively appears from the verdict that appellant herself was guilty of such negligence as to preclude her recovery. Because she was riding with another did not relieve her of the duty to look and listen for herself, and to use all reasonable means within her command to avoid injury. Even though she was riding with another, and had no authority to control or direct the movements or acts of the driver, still she was bound to show her freedom from negligence contributing to her injury. Upon this question the jury has resolved every essential fact against her, and we cannot review that finding. The facts found present a case where the court can say, as a matter of law, that appellant was guilty of contributory negligence, which will preclude her recovery. We content ourselves, upon this question, in citing the following cases, and cases therein cited: *Cadwallader* v. *Louisville, etc., R. R. Co., supra; Lake Shore, etc., R. W. Co.* v. *Boyts, supra.*

This leaves but one question for consideration, viz: The refusal of the court to submit to the jury certain interrogatories, tendered by appellant. There were thirteen of these interrogatories, and we have examined them with much care. Our conclusion is that the court did not err in refusing to submit them to

the jury. The first, third, fourth, fifth, sixth, seventh, and eighth are fully covered and embraced in other interrogatories which were submitted and answered, and appellant concedes that it was not error to reject them. The second, ninth, tenth, and twelfth called for conclusions of law, and hence were not proper to go to the jury. Ordinarily, in a special verdict, a jury is not permited to draw conclusions of law. See *Cleveland, etc., R. W. Co.* v. *Asbury*, 120 Ind. 289; *Pittsburgh, etc., R. R. Co.* v. *Spencer*, 98 Ind. 186; *Chicago, etc., R. R. Co.* v. *Ostrander*, 116 Ind. 259; *Louisville, etc., R. W. Co.* v. *Worley*, 107 Ind. 320; *Louisville, etc., R. W. Co.* v. *Pedigo*, 108 Ind. 481; *Keely Brewing Co.* v. *Parnin*, 13 Ind. App. 588, 595; *Shirk* v. *Wabash R. R. Co.*, 14 Ind. App. 137. The thirteenth interrogatory tendered and refused by the court was as follows:

"(13) Was not Stanley W. Edwins on the 3rd day of September, 1895, a physician and surgeon of more than thirty years standing?" It certainly would not have been error for the court to have submitted this interrogatory to the jury, and neither was it error to reject it.

There were but two questions at issue before the court and jury: (1) Was appellee guilty of actionable negligence, and (2) was appellant free from negligence? This interrogatory was not relative to either issue, and being wholly immaterial, there was no error in rejecting it. But aside from this, the question here presented by appellant is not available error, even if the interrogatories were improperly rejected. If it was error to reject them, it was an error occurring upon the trial of the case, and no motion for a new trial was made, and an error occurring upon the trial, not properly raised and embraced in a motion for a new trial, does not present any question for review by an assignment of error on appeal.

We might as well say that where incompetent evidence is permitted to go to the jury over objections and exceptions, the injured party could assign the same as error on appeal, without having first assigned such error as a cause for a new trial in a motion therefor. Under the practice so long established in this State, this could not be done. See *Stockwell* v. *Thomas,* 76 Ind. 506; *Boots, Admr.,* v. *Griffith,* 89 Ind. 246; *Leary* v. *Ebert,* 72 Ind. 418; *Warner* v. *Curran,* 75 Ind. 309; *Staser* v. *Hogan,* 120 Ind. 211; *Bedford, etc., R. R. Co.* v. *Rainbolt,* 99 Ind. 551; *Edwards* v. *Miller,* 42 Ind. 468; *Town of Kentland* v. *Hagan,* 17 Ind. App. 1.

In the case last cited the identical question now under consideration was decided by this court. Henley, J., speaking for the court said: "The propounding or refusal to propound any interrogatory, and the changing or modification of any interrogatory, by the court, may be objected to by counsel, and the exception to the ruling saved by bill of exceptions and is properly presented by the motion for a new trial."

In the case at bar, under the facts found, there is no possible hypothesis upon which appellant could recover, and there being no error in the record, the judgment is affirmed.