Milford Frazee, Appellant, v. City of Cedar Rapids, Appellee.

**Municipal corporations:** NOTICE OF DEFECTIVE STREET: PLEADINGS:
1 AMENDMENT. The statute requiring notice to a city of injuries caused by defective streets should be liberally construed, to the

end that parties having meritorious claims shall not be cut off by mere technicalities in the form of the notice.

Thus where the notice and the original petition claimed damages for a personal injury caused by the fright of plaintiff's horse at a large boulder allowed to remain in the street, with advertizing signs printed thereon, an amendment to the petition claiming injury to the horse and buggy, and that the city was negligent in making a ditch in the street opposite the boulder, was within the demands of the statute as to notice.

**Same:** EVIDENCE OF OTHER ACCIDENTS. In an action for injuries from the fright of a horse at an object in the street evidence that other ordinarily safe and gentle horses were frightened at the same object is admissible.

**Same:** STREET OBSTRUCTIONS: DUTY OF CITY. The duty of a city to keep its streets free from obstructions that may seriously interfere with travel extends not only to those obstructions with which vehicles may come in collision, but also from objects somewhat removed from the path of travel, yet naturally calculated and which may reasonably be expected to frighten horses of ordinary gentleness.

**Same:** OBJECTS LIKELY TO FRIGHTEN HORSES: BURDEN OF PROOF. Where an obstruction in a street is one that the city has no right to make or permit to remain it may be liable for the fright of a horse caused thereby, though not of ordinary gentleness; but where the obstruction is not in the traveled path and becomes dangerous simply because likely to frighten ordinarily gentle horses it is incumbent upon one claiming damages on account thereof to show that the horse he was driving was of ordinary gentleness.

**Same:** INSTRUCTION. The jury should not be required to find that the object was such that it would frighten a horse of ordinary gentleness, but simply that it was likely to do so.

**Same.** A city's negligence in permitting a street obstruction does not depend upon common knowledge but upon knowledge acquired in the performance of its duty, and instructions requiring the jury to find that plaintiff's horse was such that as a matter of common knowledge it was likely to take fright at the object should not have been given.

**Same:** CONTRIBUTORY NEGLIGENCE. The instruction in this action that if plaintiff had previously traveled that street and knew of the obstruction and exercised the same care in driving a reasonably gentle horse that the city exercised in permitting the obstruction, then he contributed to his own injury and could not

recover was erroneous; because depriving plaintiff of the right to assume that the city had taken due precaution for the safety of the street, and because imposing on plaintiff a greater degree of care than that of ordinary care and caution.

*Appeal from Linn District Court.*—Hon. M. P. Smith, Judge.

Friday, May 5, 1911.

Action at law to recover damages for personal injuries received by plaintiff, caused by his horse being frightened at a boulder which was allowed to remain in one of defendant's streets. In an amendment to the petition, he also averred that his injuries were ·caused, not only by defendant's negligence in permitting the boulder to remain in the street, but also by reason of defendant's having negligently made a large ditch or excavation in the street just opposite the boulder, and a steep and dangerous incline about three feet in height along the easterly side of the street, and at or near the boulder. These latter grounds of negligence were pleaded ·as a second count to an amended and substituted petition, filed nearly one year after the accident and something like eleven months after notice had been given the city of plaintiff's claim for damages. In this amendment to the petition, plaintiff also asked damages for injuries done his property because of defendant's negligence.

This claim for damage to property and the second count of the petition were stricken on defendant's motion and the case went to trial on the issues tendered by plaintiff in his original petition and defendant's answer thereto, resulting in a verdict and judgment for defendant, and plaintiff appeals. *Reversed.*

*John N. Hughes* and *Chas. R. Sutherland,* for appellant.

*John M. Redmond, Wm. Chamberlin* and *F. C. Byers,* for appellee.

Deemer, J.—I. The negligence charged in the original petition is as follows: "That for a long time last past the defendant has permitted, maintained, suffered, and allowed to remain on and upon the westerly side of the street and highway commonly known as the Center Point road, within the said city, the same being the street and highway extending northerly from the intersection of Thirteenth (13th) street and E avenue to the city limits, and at a point upon said street and road between two and twenty rods from the city limits or Maple avenue, a large boulder, rock, and stone about five and one-half (5½) feet in height and of more than ten feet in diameter, and of such shape, size, and character as to cause horses and animals to become unmanageable when being driven along, near, and past the same. That the said city has also permitted, authorized, and allowed various persons, firms, and corporations to paint letters and write upon the said boulder, rock, and stone large signs that tend to so frighten horses when driven along and past the same."

*1. Municipal corporations: notice of defective street: pleadings: amendment.*

The accident happened on March 25, 1908, and on April 4, 1908, plaintiff caused a written notice to be given to the city from which we extract the following:

The undersigned, Milford Frazee, states that on the 25th day of March, 1908, while driving a horse and buggy and passing along the street and highway commonly known as the Center Point road, the same being the street and highway extending northerly from the intersection of Thirteenth street and E avenue to the city limits, and at a point upon said road between Thirteenth and Thirty-First streets, and between two and ten rods from the city limits, or Maple avenue, the said horse became frightened and unmanageable at a large stone or boulder in and upon said street and highway, and threw the undersigned from the

buggy, fracturing some of his ribs and causing him personal and internal injuries.

That the particular negligence of the city of Cedar Rapids which caused the injury and damage to the undersigned was in allowing a stone of about five and one-half (5½) feet and of more than ten feet in diameter to remain in said highway and street, and in such close proximity to the traveled way, as to frighten horses and teams driven along and upon said highway; also in permitting advertising signs to be painted upon the same and in permitting a permanent obstruction in said street and highway.

The particular injury to the undersigned was the fracturing of one or more ribs, injury to his back, spine, and internal and permanent injuries. That by reason of the injury complained of the undersigned has been damaged in the sum of three thousand five hundred ($3,500.-00), which amount he hereby makes claim for and against the city of Cedar Rapids, and asks that the same be paid to him.

On June 3, 1908, plaintiff caused an original notice to be served upon the city which contained the following, among other, statements: "You are hereby notified that on or before the 23d day of June, A. D. 1908, there will be on file in the office of the clerk of the district court of the state of Iowa, in and for Linn county, the petition of the plaintiff aforesaid, claiming of you, the city of Cedar Rapids, Iowa, the sum of thirty-five hundred dollars, . . . as money justly due from you the city of Cedar Rapids, Iowa, on account of damages received by him on or about the 25th day of March, 1908, by reason of defects and obstructions in a certain street known as the Center Point road, or Thirteenth Street East. For full statement of cause of action, see petition on file."

No reference was made to any ditch or excavation in the original petition, and no claim was made for damages to property. In an amended and substituted petition, filed as before stated, plaintiff made claim for damages done his

property, and also introduced the second count to his petition hitherto stated. On defendant's motion, this claim for damages to property and the entire second count of the amended and substituted petition were stricken, and timely exception was taken to the rulings. It is claimed that the parts stricken did not introduce new causes of action, and that the rulings were erroneous.

If nothing more than the general statute of limitations were involved, there would be much force in appellant's contention, if we are to follow *Gordon v. Railroad,* 129 Iowa, 747, and *Thayer v. Coal Co.,* 129 Iowa, 550. But the propositions involve the construction of a special statute reading as follows: "In all cases of personal injury or damage to property resulting from defective streets or sidewalks, or from any cause originating in the neglect or failure of any municipal corporation or of its officers to perform their duties, no suit shall be brought against any such city after three months from the time of the injury or damage, and not then unless a written verified statement of the amount, nature and cause of such injury or damage, and the time when and the place where such injury occurred, and the particular defect or negligence of the city or its officers which it is claimed caused or contributed to the injury or damage, shall be presented to the council or filed with the clerk within thirty days after said alleged injury or damage was sustained." Code, section 1051. Under this section it has been held that there can be no recovery, under an amendment to a petition filed more than three months after the injury, for items of damage not included in the statement of the claim. *Ulbrecht v. Keokuk,* 124 Iowa, 1.

But in *Schnee v. Dubuque,* 122 Iowa, 459, we said of this statute:

It seems to us that the notice sufficiently states facts which, if established, might render the city liable. It is not necessary for us to determine how far other facts and

circumstances tending to show how the accident happened, and the defective condition of the walk, may be proven under such a notice.  If the defective condition of the walk which was described contributed, with other causes, to the resulting injury, the city may be liable, although the other causes were not the result of the fault of the city, provided, of course, they were not due to negligence of the person injured.  *Eginoire v. Union County,* 112 Iowa, 558; *Gould v. Schermer,* 101 Iowa, 582; *Hodges v. Waterloo,* 109 Iowa, 444; *Langhammer v. Manchester,* 99 Iowa, 295.  It must be borne in mind in the construction of this statute that it requires a very prompt notice of the injury and of the defect complained of.  It may well be that some material facts are not discoverable until the witnesses are examined in court.  On the trial of the case great liberality is allowed in amendment to make the pleadings cover the particular facts disclosed by the evidence.  No amendment of the notice, however, is provided for.  It is evident, therefore, that it would be unjust to give to the statute so strict a construction as to exclude proof of all facts relating to the nature and cause of the injury, and the defect or negligence complained of, which are not detailed in the notice.  The statute should rather give a liberal construction, to the end that parties having meritorious claims shall not be cut off by mere technicality as to the form of notice required.  *City of Lincoln v. Pirner,* 59 Neb. 634 (81 N. W. 846); *Tattan v. Detroit,* 128 Mich. 650 (87 N. W. 894).

The section quoted applies to special charter cities only, and it is contended that while defendant was such a city when the accident occurred, it had, prior to that time, by vote properly taken, adopted the commission plan of government, although it had not selected its officers under this plan, and did not do so until about two weeks after the accident occurred.  The so-called commission plan of government is provided by chapter 48, Acts Thirty-Second General Assembly, and chapter 64, Acts Thirty-Third General Assembly.  The latter act did not become effective, however, until April 1, 1909, and is not material to any issue in this case.

Section 3 of chapter 48 of the Acts of the Thirty-Second General Assembly, which act was in force when plaintiff received his injuries, contains this provision: "All laws governing cities of the first class and not inconsistent with the provisions of this act, and sections 955, 956, 959, 964, 989, 1000, 1023 and 1053 of the Code now applicable to special charter cities and not inconsistent with the provisions of this act, shall apply to and govern cities organized under this act, . . . and no right or liability either in favor of or against it, existing at the time, and no suit or prosecution of any kind shall be affected by such change, unless otherwise provided for in this act."

Without now going into the vexed question as to whether or not we should take judicial notice of the procedure of the defendant city relative to the change of its form of government and of the exact time when these changes occurred, we shall take it for granted that appellant's statements with reference thereto are true. But the section last quoted expressly provides that no right or liability, either in favor of or against it, existing at the time, and no suit or prosecution of any kind, shall be affected by such change. This, as it seems to us, is controlling, and it undoubtedly relegates us to the law as it existed when the injury occurred. Under that law plaintiff had no right to introduce claims for damages to property in his amended and substituted petition; but if we are to follow the holding in *Thayer v. Coal Co.* and *Schnee v. Dubuque, supra,* it seems that the trial court was in error in striking the second count of the amended and substituted petition. See, as further supporting this view, *McCartney v. City,* 124 Iowa, 382.

II. In order to show the dangerous character of the boulder, plaintiff offered testimony to show that before the accident other horses of apparent gentleness frequently frightened at this boulder. Some of this testimony was

received, but was afterwards rejected, because the witnesses

2. SAME: evidence of other accidents.

did not know the nature and character of the horses which frightened. These rulings were erroneous. The witnesses showed some knowledge of the character of these horses, and the weight of the testimony was for the jury. The rule of this court is that, under issues such as were here presented, testimony to the effect that other ordinarily safe and gentle horses were frightened by the object complained of is admissible. *Heinmiller v. Winston*, 131 Iowa, 32.

Speaking more directly to the proposition here involved, we quoted from a Massachusetts case the following: "In the present case the only collateral inquiry which could arise is whether a horse, called by a witness 'an ordinarily safe and gentle horse,' comes within that class. Such inquiry is certainly simple. We think there would be no practical difficulty in receiving and weighing testimony in regard to the conduct of horses which seem to be like ordinary horses in common use." *Bemis v. Temple*, 162 Mass. 342 (38 N. E. 970, 26 L. R. A. 254). And from *House v. Metcalf*, 27 Conn. 631, we quoted the following: "The plaintiff had a right, not only to show the facts regarding its size, form, location, exposure to view, and mode of operation, from which the jury might infer what effects it would naturally, necessarily, or probably produce, but also to prove what effects it had produced in fact. . . . The inquiry in every such case is not, whether the evidence offered is sufficient to prove the fact claimed, but whether it tends to prove it." Manifestly the trial court was in error in striking out this testimony.

III. The duty rests upon municipal corporations to keep their streets in a safe condition and free from all obstructions that may seriously interfere with travel. This duty relates not only to defects in the highway and objects thereon, against which vehicles may come in collision, but also extends to injuries resulting from the fright of

horses of ordinary gentleness at objects upon the streets naturally calculated to, and which may reasonably be expected to, produce such fright, when obstructions are suffered to be placed or to remain upon a street which by their appearance are calculated to frighten such horses. In such circumstances it can not be said that a highway is in a reasonably safe condition for public travel.

3. SAME: street obstructions: duty of city.

In *Morse v. Town of Richmond*, 41 Vt. 438 (98 Am. Dec. 600), the court said: "That, perhaps, may be as effectually defeated by an obstruction which impedes travel by its frightful appearance, as by one which, if it is hit, will be an obstacle to the secure passage of the wheels of a carriage." Again, in *Bartlett v. Hooksett*, 48 N. H. 18, it is said: "Objects calculated to frighten horses would often be far more dangerous and much less easily guarded against by the traveler than any obstruction with which he comes in actual contact or collision." In *Foshay v. Town*, 25 Wis. 288 (3 Am. Rep. 73), it was said: "We adopt upon this subject the rule . . . that objects within the limits of a highway naturally calculated to frighten horses of ordinary gentleness may constitute such deficiencies in the way as to render the town liable, even though so far removed from the traveled path as to avoid all danger of collision." Other cases to the same effect might be cited, but this seems unnecessary in view of the general tenor of the authorities. They will be found collected in Beach on Public Corporations, vol. 2, section 1513, and in volume 5, Thompson on Negligence, section 6075 *et seq.*

This is the rule announced in our own case of *Cutter v. Des Moines,* 137 Iowa, 644. The only qualification is that the traveler, in order to have protection, must be driving a horse of ordinary gentleness and docility, and himself be in the exercise of due care. See *Town of Rushville v. Adams,* 107 Ind. 475 (8 N. E. 292, 57 Am. Rep.

124); *City of Rome v. Suddeth,* 116 Ga. 649 (42 S. E. 1032); *Bloor v. Delafield,* 69 Wis. 273 (34 N. W. 115). This rule seems to be peculiar to such situations as exist in this case.

Ordinarily, as appears in the *Suddeth* case, *supra,* and in *Brewing Co. v. Parnin,* 13 Ind. App. 588 (41 N. E. 471), if the obstruction or act be one that a person has no right to do or make at all, then there may be liability, even though the horse be not one of ordinary gentleness; but where, as here, the obstruction is not in the traveled path, and becomes obnoxious simply because of its being likely to frighten horses of ordinary gentleness, it must appear that the horse which the driver is driving is of that kind. We quote the following from *Parnin's* case, *supra,* as indicating the law upon this subject:

4. SAME: objects likely to freighten horses: burden of proof.

> The person using a highway for purposes other than travel is in duty bound to conform to the rights of the traveling public. A violation of these duties may constitute negligence and lead to legal liability. There is no rule of law that forbids a person from traveling on the highway with a skittish or ill-broken horse; but, if he do so, he may be liable for the injuries resulting therefrom. Nor is there any fixed rule as to what objects a person may bring upon, or what acts he may do upon, a highway. But there are objects and acts which have a tendency to frighten horses. . . . If a person bring such an object upon or do such an action on a highway, he will violate a duty he owes to the traveling public, and be guilty of negligence. It does not follow that because he is negligent he is liable. The person injured may also be in fault. If the latter be traveling with a skittish or untrustworthy horse, there are instances in which he will be deemed to have assumed the risk or contributed to his own injury; for, although the object or act done may have had a tendency or was likely to frighten any kind of a horse, and although both a gentle horse and a skittish horse might have passed the object or act without becoming frightened, still there is much more probability that a

skittish horse would become frightened than a gentle and well-trained one. It is for these reasons that in order to make the complaint good it should aver, either specially or in equivalent general terms, that the object or act done had a tendency to or was likely to frighten a horse of ordinary gentleness. In other words, the complaint must aver negligence on the part of the defendant, and negative contributory negligence on the part of the plaintiff. . . . If the obstruction or act be one that a person have no right to do or make at all, then there may be a liability, even though the horse be not one of ordinary gentleness.

Appellant's contention that plaintiff need not show that the horse he was driving was one of ordinary gentleness has no support in any of the cases cited. The nearest approach to such a rule is found in *Peterson v. Exp. Co.,* 111 Iowa, 572. But the question there considered was one of contributory negligence, and the matter here involved was neither discussed nor decided.

In a general way the instructions given by the trial court announced the rules of law above set forth. In one instruction, however, the jury was required to find that 5. Same: instruction.   the boulder was of such a character that it would frighten a horse of ordinary gentleness, instead of being such that it was likely to do so. The distinction may not be such as to have attracted the attention of the jury, but in view of a new trial it is well to call attention to the matter, in order that there may be no repetition of the error.

The eighth instruction read in this wise: "If you find that the horse was an ordinarily gentle and well-broken horse and subject to control, and the plaintiff was 6. Same.   at the time managing it and driving it in an ordinary, careful, and prudent manner, having reference to all the surrounding conditions and circumstances, then you will endeavor to determine from the evidence whether or not it is a matter of common knowl-

edge that such a horse, so managed and driven, would be likely to take fright at the rock or boulder on the roadside shown in evidence." This instruction in its reference to common knowledge was erroneous. The city, through its officials, had a duty to perform which did not depend upon common knowledge, but upon knowledge gained in the performance of that duty.

Instruction 14 given by the trial court reads as follows: "If you find from the evidence that the plaintiff, having traveled the street or road in question before, and knew of the existence of the rock or boulder 7. SAME: contributory and its condition and location, and you find negligence. he exercised the same care and caution in driving a reasonably safe and gentle horse past it that the city officials did in leaving it there, then he contributed to his own injury and can not recover in this action. The same degree of caution and prudence is imposed on the plaintiff to drive an ordinarily gentle and well-broken horse by the object likely to frighten it as is imposed on the city officials to know that such an object is likely to frighten such a horse when being driven with ordinary care and caution. And a greater degree of caution was required of plaintiff, if he knew or in the exercise of ordinary intelligence had reason to know, that the horse he was driving was not as gentle, well-broken, and under control as ordinary horses." This instruction is erroneous in at least two particulars. In the first place, plaintiff had the right to assume that the street was safe, and that the city had taken the proper precautions to keep it so. Upon this assumption he had the right to rely, and the city may have been guilty of negligence in looking after the boulder, although the degree of care required of it and its officials was no higher than that required of the plaintiff. If this were not true, then in few cases could there be a recovery for injuries due to a defective street or highway.

Again, the instruction is erroneous, in that it im-

posed upon plaintiff a greater degree of caution than the law exacts. All that a plaintiff need show is that he exercised ordinary care and caution. What this was, of course, depended upon his surroundings at and near the time of the accident, but the standard at all times is ordinary care and caution.

The record is in some confusion, but the points we have considered do not seem to be in dispute.

For the errors pointed out, the judgment must be, and it is, *reversed*.