## Lake Shore and Michigan Southern Railway Company v. Boyts.

[No. 1,881.    Filed January 28, 1897.]

Negligence. — *Damages.* — *Contributory Negligence.* — *Burden of Proof.*—In an action for damages based upon the negligence of the defendant it does not devolve upon defendant to show that plaintiff was guilty of contributory negligence, but the burden is on plaintiff to show, not only the negligence of the defendant, but also his own freedom from any negligence contributing to the injury. *p. 646.*

Same. —*Railroads.*—It is negligence to back an engine and cars across a street of a town at the rate of eight miles an hour, with no person on the car and without sounding the whistle or ringing the bell, and without giving any warning of its approach. *p. 646.*

Same.—*Imputed Negligence.*—Where one, as a guest, accepts an invitation to ride in the vehicle of another, without any authority to control or direct the movements of the driver thereof, or without any reason to doubt that the driver is skillful and competent, the negligence of the owner or driver will not be imputed to the guest so as to deprive him of the right to compensation from one whose neglect of duty has resulted in his injury. *p. 647.*

Same.—*Contributory Negligence.*—*Approaching Railroad Crossing.*— Where one is riding in a vehicle as the guest of the driver, it is no less his duty than it is the duty of the driver when approaching a railroad crossing to look and listen to learn of danger and avoid it, if practicable. *p. 648.*

Same.—*Approaching Railroad Crossing.*—*Contributory Negligence.*— One riding in a vehicle as the guest of another who neither looks nor listens on approaching a railroad crossing with which he is familiar, although he knows that a train has arrived at the station near the crossing, and has an unobstructed view of a sidetrack for a distance of 80 feet when 20 feet from the track, and who gives no notice to the driver, is guilty of such contributory negligence as will prevent a recovery for an injury caused by a train backing over the crossing on such sidetrack. *pp. 650-656.*

From the Elkhart Circuit Court.    *Reversed.*

*Francis E. Baker* and *Charles W. Miller*, for appellant.

*James D. Osborne* and *Aaron S. Zook*, for appellee.

ROBINSON, J.—The facts in this case as found by the jury are in substance as follows: The appellant's railroad track runs through the town of Constantine, Michigan, in a general north and south direction, and parallel to and west of the main track is a side track. Centerville street, in said town, crosses the main track and sidetrack at grade in a general east and west direction. The appellant's depot building is 280 feet north of the Centerville street crossing. The appellee was familiar with the crossing where the accident occurred, and with the location of tracks and buildings as they existed on that day, and for ten months prior thereto. The sidetrack terminated and connected with the main track 485 feet south of the Centerville street crossing. Station street, in said town, connects with Centerville street from the north, 65 feet west of the railroad tracks, and extends north, in the general direction of the railroad tracks, to a point west of the depot buildings, and then bears off somewhat to the left looking north. The railroad tracks were laid on a curve extending from the depot to the end of the sidetrack south of the crossing, the outer side of the curve being west. The two tracks were the only railroad tracks at the crossing. The ground north of Centerville street, and between Station street and the railroad tracks up to the depot building was vacant and unoccupied, except for some logs lying thereon, but these logs would not prevent a person proceeding southward along Station street, either riding in a cutter or walking, from seeing engines and cars on the tracks to the east and southeast of him. The appellee knew of these logs being there before January 14, 1893. On the south side of Centerville street, and six feet eight inches west of the west rail of the sidetrack, is a lime house. On the same

side of Centerville street and west of the lime house is a lumber office. These buildings would not prevent a person in a cutter, who was on Centerville street until within about 20 feet of the railroad tracks, and also on Station street for about 100 feet north of Centerville street, from seeing an engine and cars approaching on the sidetrack from the south of Centerville street until such engine and cars came within about 40 or 50 feet of the northeast corner of the lime house. A person driving south on Station street, when at a point about 200 feet north of Centerville street, and opposite the depot could see an engine and cars approaching from the south on the sidetrack for about 65 feet south of the northeast corner of the lime house. A person driving south on Station street, when at a point about 185 feet north of Centerville street, could see an engine and cars approaching from the south on the sidetrack for about 60 feet south of the northeast corner of the lime house. The appellee approached the crossing coming southward along Station street, and then eastward on Centerville street, seated on the left hand side in a cutter, with a friend named Hamilton, on the right side; the cutter being drawn by two horses, the cutter and horses being the property of Hamilton and the team being at the time driven by him. Appellee came upon Station street more than 240 feet north of Centerville street, and had his ears covered with ear muffs, or ear tips, while he was in the cutter, up to the time of the accident. The team was driven all the way south on Station street, and east on Centerville street "on a good trot" until the heads of the horses were at the west rail of the sidetrack. While going south on Station street the appellee looked straight ahead and to the left toward the depot. On Centerville street the appellee looked straight ahead, and did not see the engine and cars

until they were within one or two feet of the heads of the team.   On the day of the accident the appellee was in full possession of his senses of sight and hearing.   While riding southward on Station street, appellee did not see the engine and cars at the switch, or at any point between the switch and the Centerville crossing and the sidetrack.   The train was a local freight train and came into Constantine on the main track from the north at about its usual time, and stopped at the station.  The engine with two cars went south along the main track to the switch south of the crossing, and backed in on the sidetrack.   Part of the train left standing on the main track projected south beyond the south end of the depot building, which part the appellee saw while riding along Station street.   Appellee knew that a local freight came from the north at that time.   At the time appellee saw that portion of the train on the main track he did not know that the engine had gone south on the main track. The appellee knew the location of the switch.   The engine was equipped with a steam whistle and bell, as required by a law of the state of Michigan.   There was no city or town ordinance requiring the sounding of the whistle within the limits of Constantine, nor prohibiting the running of trains faster than six miles per hour.  As the engine and car backed in on the sidetrack and upon the street crossing, there was no brakeman upon the rear car, nor was the engine bell ringing.   The employes of the company stopped the engine and cars as soon as possible after the team and cutter came in sight, east of the line of the lime house. The appellee approached the tracks in the center of Centerville street, which is 33 feet from the north line of the lime house.   A person in the center of Centerville street, when twenty feet west of the nearest rail, can see a car approaching from the south on the side-

track a distance of 80 feet from the center of Centerville street, and at a distance of 30 feet west of the nearest rail, can see a car approaching a distance of 60 feet from the center of Centerville street. Neither when appellee was at the point 30 feet west of the nearest rail, nor when 20 feet west of the nearest rail, nor at any time between these points, did he look south to see whether an engine and cars were approaching. Appellee "told Hamilton to look out, there might be a train." In approaching the crossing the appellee did nothing to prevent an accident at the crossing. The accident occurred at about half past three in the afternoon. It was a clear, quiet, cold day. There were sleigh bells on the team which rang as the team trotted. As the heads of the horses reached the west rail, the team turned and went northward, parallel with the track and west of it. The car struck one of the horses and the team fell. Appellee was in the cutter after the team fell, but he was not struck by the cars or engine. The appellee alighted from the cutter on his feet and hands in the snow eight or ten inches deep. The appellee did not at any time prior to the time the horse was hit by the car attempt to get out of the cutter nor attempt to stop the cutter. The ailments the appellee complains of were caused by this accident. On the south side of Centerville street, coming flush to the south line or edge of the street, and being within seven feet west of the west rail of the switch line, there was a building known as the plaster or lime house. About ten feet west of this building was a building known as the lumber office. It is about 70 feet from the point where the center of Station street intersects the center of Centerville street to the west rail of the switch track. These buildings obstructed the view so that a person, riding in a cutter on Station street, and east on Cen-

terville street, could not see the approach of an engine or car coming north on the sidetrack at any point between the switch and the place at which the car would emerge to view in front of the northeast corner of the plaster house. The appellee traveled in the center of said streets. The team and cutter belonged to Hamilton, who was at the time driving and who was a competent and careful driver. Appellee had no control over, or right to control Hamilton or the team. As the cars were being pushed north from the switch the engine bell was not ringing nor was any other signal given. It was down grade from the switch northward to the crossing. The cars were being pushed at the rate of eight miles per hour, and made less than the usual amount of noise. The injuries referred to in the complaint were the injuries received by appellee at the time mentioned. When in the center of Centerville street, about 70 feet west of the switch track, the appellee said to Hamilton, "You better hold up, there might be a train coming," or words to that effect. Centerville street was much traveled at that time, was 66 feet wide, and was the main thoroughfare leading from the village to the country east and south. There was no flagman or gates at the crossing. Hamilton did not stop his team before reaching the crossing. From the horses' heads to where Hamilton sat in the cutter was about 16 feet. When appellee spoke to Hamilton to hold up, appellee braced his feet to prepare to spring out in case there should be danger. Appellee jumped out of the cutter as soon as he could after the advancing cars appeared to view. The damages were fixed at $400.00.

Upon the special verdict the appellant moved for a judgment in its favor, which was overruled by the court and judgment rendered in favor of the appellee for the sum of four hundred dollars.

The appellant has assigned errors as follows: "1. The court erred in overruling appellant's motion for judgment in its favor on the special verdict returned by the jury.  2. The court erred in rendering judgment in favor of appellee for the sum of four hundred dollars on the special verdict returned by the jury."

It is firmly settled by the Supreme Court of this State that in an action of this kind contributory negligence on the part of the plaintiff is not a matter that the defendant must establish; but that the plaintiff must allege in his complaint and prove that the injury was incurred without his own negligence, having contributed thereto.  The burden is on him to show, not only the negligence of the defendant, but also his own freedom from any negligence contributing to the injury.

Appellant's counsel insist in their brief that the special verdict fails to show any negligence on the part of the railroad company.

The facts found by the jury show that at the time of the accident there was in force a law of the state of Michigan requiring the appellant to sound the whistle twice, at least 40 rods before a crossing was reached, and to ring the bell continuously until the crossing was passed under a penalty of $100.00 for every neglect.  But in the absence of any statute it was the duty of the appellant to give reasonable and timely warning as it neared the crossing.  Hence, to back an engine and cars across a street in a town at the rate of eight miles an hour, with no person on the car, and without sounding the whistle or ringing the bell, and without giving any notice or warning of its approach is sufficient to establish negligence on the part of those operating the train.  *Pittsburgh, etc., R. R. Co.* v. *Burton,* 139 Ind. 357; *Louisville, etc., R. W. Co.* v. *Rush,* 127 Ind. 545; *Cincinnati, etc., R. R. Co.* v. *Butler,* 103

Ind. 31; *Louisville, etc., R. R. Co.* v. *Schmidt,* 126 Ind. 290.

It appears from the special verdict that the appellee was the special guest of his neighbor, Hamilton, who was found to be a competent and careful driver, and with whom appellee was riding. The team and sleigh, or cutter, belonged to Hamilton. As they turned into Centerville street about seventy feet from appellant's tracks, the appellee "told Hamilton to look out, there might be a train." In view of the facts found it seems to us clear, beyond question, that Hamilton, the owner and driver of the team, was guilty of negligence in attempting to cross the railroad tracks in the manner he did. And it is contended by counsel for the appellee that inasmuch as the appellee was simply the guest of the driver and had no control over the team, the driver's negligence can not be imputed to him.

Whatever may be the law in other jurisdictions the rule prevails in this State that where one, as a guest, accepts the invitation to ride in the vehicle of another without any authority to control or direct the movements of the driver, or without any reason to doubt that the driver is skillful and competent, the negligence of the owner or driver will not be imputed to the guest so as to deprive him of the right to compensation from one whose neglect of duty has resulted in his injury. *Brannen* v. *Kokomo, etc., Gravel Road Co.,* 115 Ind. 115; *Pittsburgh, etc., R. R. Co.* v. *Spencer,* 98 Ind. 186; *City of Michigan City* v. *Boeckling,* 122 Ind. 39; *Town of Knightstown* v. *Musgrove,* 116 Ind. 121; *Town of Albion* v. *Hetrick,* 90 Ind. 545; *Louisville, etc., R. R. Co.* v. *Creek,* 130 Ind. 139; *Board, etc.,* v. *Mutchler,* 137 Ind. 140; *Lake Shore, etc., R. W. Co.* v. *McIntosh,* 140 Ind. 261.

But even if the negligence of the driver, Hamilton,

cannot be imputed to the appellee, and as shown by the above cases it cannot be, the appellee must still show that he was free from negligence contributing to his injury. And the same rule would not apply where the guest was riding inside a closed carriage without opportunity to discover danger and inform the driver of it, that would apply where the guest was seated at the driver's side, and had the same opportunity with the driver to discover and avoid danger. *Brickell* v. *New York, etc., R. R. Co.*, 120 N. Y. 290. Although he may be simply a guest, if he has the opportunity to do so, it is no less his duty than it is the duty of the driver when approaching a railroad crossing, to look and listen and to learn of danger and avoid it if practicable. He has the burden of establishing, affirmatively, freedom from contributory negligence, or as said in the opinion of *Tollman* v. *Syracuse, etc., R. R. Co.*, 98 N. Y. 202, that plaintiff "approached the crossing with prudence and care, and with senses alert to the possibility of approaching danger."

In *Cincinnati, etc., R. W. Co.* v. *Howard*, 124 Ind. 280, where a daughter, injured at a railway crossing, was riding in a buggy drawn by a horse driven by her father, it was held error to refuse the following instruction: "The burden is on the plaintiff to show by a preponderance of the evidence, that she and her father vigilantly used their eyes and ears to ascertain if a train of cars was approaching, and if this has not been shown to you by a preponderance of the evidence, the plaintiff cannot recover."

In the case of *Hoag* v. *New York, etc., R. R. Co.*, 111 N. Y. 199, in speaking of a case where the wife was seated in a wagon drawn by a team which her husband was driving, it was said, "If they did not see it [the train], or, at least, the deceased did not see it, she was negligent, for she was bound to look and listen,

and the facts show that if she had looked, she could have seen, and would have seen, the approaching train. She had no right, because her husband was driving, to omit some reasonable and prudent effort to see for herself that the crossing was safe." This statement was approved in *Miller, Admr.,* v. *Louisville, etc., R. R. Co.,* 128 Ind. 97; *Allyn* v. *Boston, etc., R. R. Co.,* 105 Mass. 77.

In *Miller, Admr.,* v. *Louisville, etc., R. R. Co., supra,* which was an action by a wife, injured at a railway crossing while riding in a wagon with her husband, who was driving, it is said: "The intestate approached a crossing known to her to be dangerous, and approached it when a train was in full view; she took no precautions to warn her husband or to avert the threatened danger, although slight care might have avoided it. While the husband's negligence is not to be imputed to her, she was, nevertheless, under a duty to herself to exercise ordinary care."

In *Cadwallader* v. *Louisville, etc., R. W. Co.,* 128 Ind. 518, the appellee kept a watchman at the crossing who gave no notice to the appellant that a train was approaching. Before entering upon the crossing, with which the appellant was familiar, she did not look for approaching trains, but looked at the watchman stationed at the crossing. At the time of the injury the appellant was a person of ordinary intelligence, and possessed of good hearing and good eyesight. When within twenty feet of the railroad track the appellant had an unobstructed view of the track for the distance of one hundred feet north, and when within ten feet of the track she had an unobstructed view for the distance of three hundred feet, and could have seen the approaching train before she stepped upon the track had she looked. "It has been repeatedly decided," says Coffey, J., speaking for the

court, "by this and other courts of last resort, that one who approaches a railroad crossing with which he is familiar, and attempts to cross without looking and listening for approaching trains, where it is possible to do so, is guilty of such contributory negligence as precludes him from a recovery if he is injured. Indeed the principle is so well settled, and is so firmly fixed in our jurisprudence as not to need further elaboration." *Ohio, etc., R. W. Co.* v. *Hill,* 117 Ind. 56; *Indianapolis, etc., R. W. Co.* v. *Wilson,* 134 Ind. 95; *Indiana, etc., R. W. Co.* v. *Hammock,* 113 Ind. 1; *Chicago, etc., R. W. Co.* v. *Hedges,* 118 Ind. 5; *Indiana, etc., R. W. Co.* v. *Greene,* 106 Ind. 279; *Lake Shore, etc., R. W. Co.* v. *Pinchin,* 112 Ind. 592; *Mann* v. *Belt, etc., R. R. Co.,* 128 Ind. 138.

In view of the above well settled law of this State, and, reasoning therefrom, we fail to see any difference in principle between relying upon the watchman in the one case and upon the driver in the other. The negligence of neither the watchman nor the driver can be imputed to the traveler, but it certainly could not be said that the traveler could excuse himself by exercising a less degree of care when relying upon the driver than when relying upon the watchman.

The special verdict finds that the appellee was riding in a cutter seated in the same seat with the driver and upon the driver's left. He was then and for ten months had been familiar with the crossing and the surroundings with reference to location of tracks and buildings. His sight and hearing were good. He entered upon Station street more than 240 feet north of Centerville street. While riding south on Station street the appellant did not simply look straight ahead, but looked to the left towards the depot. While riding on Centerville street he looked straight ahead. While riding east on Centerville street he did not see

the engine and car approaching the crossing until they were within one or two feet of the team. The lime house and lumber office on the south side of Centerville street, and west of the railroad tracks would not prevent a person in a cutter who was on Centerville street east of Station street until within about twenty feet of the railroad tracks, and also on Station street for about 100 feet north of Centerville street, from seeing an engine and cars approaching on the sidetrack from the south of Centerville street until they came within about 40 or 50 feet of the northeast corner of the lime house. At a point on Station street about 200 feet north of Centerville street a person could see an engine and cars approaching from the south on the sidetrack for about 65 feet south of the northeast corner of the lime house, and at a point about 185 feet north, could see an engine and cars about 60 feet south. A person in the center of Centerville street, when 20 feet west of the nearest rail, can see a car approaching from the south on the sidetrack a distance of 80 feet from the center of Centerville street, and when 30 feet west, can see a car 60 feet. Appellee approached the railroad tracks in the center of Centerville street, and neither when 20 feet west of the nearest rail nor when 30 feet west of the nearest rail, and at no place between said points, did he look south to see whether an engine and cars were approaching.

The above is the finding of the jury as to what the appellee did in the way of looking and as to his opportunity to see if he had looked.

The rule laid down in *Hathaway* v. *Toledo, etc., R. W. Co.*, 46 Ind. 25, has been approved in many subsequent cases as follows: " 'When a person crossing a railroad track is injured by a collision with a train, the fault is, *prima facie*, his own, and he must show

affirmatively, that his fault or negligence did not contribute to the injury, before he is entitled to recover for such injury.' " *Cincinnati, etc., R. R. Co.* v. *Butler, supra; Lake Erie, etc., R. R. Co.* v. *Stick,* 143 Ind. 449; *Cincinnati, etc., R. W. Co.* v. *Duncan,* 143 Ind. 524; *Smith* v. *Wabash R. R. Co.,* 141 Ind. 92; *Shirk* v. *Wabash R. R. Co.,* 14 Ind. App. 126.

The verdict shows that there were some obstructions to the view south of the crossing but it also shows that these obstructions were not so great as to shut out all sight. The fact that the appellee had his ears covered with ear muffs, or ear tips, and that there were sleigh bells on the team, ringing, imposed the duty of increased care in the use of the sense of sight. Beach, Contrib. Neg. (2d ed.), section 183, and cases cited. It is shown that as the engine and cars backed north on the sidetrack, and approached the crossing, they made much less than the usual amount of noise and rumbling sound, but there is no finding that the appellee listened for the train or that he could not have heard it had he listened.

In *Stewart* v. *Pennsylvania Co.,* 130 Ind. 242, the court says: "A person is bound to use the senses, and exercise the reasoning faculties with which nature has endowed him. If he fails to do so, and is injured in consequence, neither he, in life, nor his representatives after his death, can recover for resulting injuries."

In *Smith* v. *Wabash R. R. Co., supra,* Monks, J., speaking for the court says: "It is settled law in this jurisdiction, that when one approaches a point where a highway crosses a railroad track on the same level, it is his duty to proceed with caution, and if he attempts to cross the track, either on foot or in a vehicle of any kind, he must exercise ordinary care under the circumstances, in so doing. He must assume that

there is danger and act with ordinary care and prudence upon that assumption.

"The law defines precisely what the term ordinary care, under the circumstances, shall mean in these cases. The question of care at railway crossings as affecting the traveler, is no longer, as a rule, a question for the jury. The *quantum* of care in a large class of cases is exactly prescribed as a matter of law.

"In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively both ways for approaching trains, if the surroundings are such as to admit of that precaution. If a traveler by looking could have seen an approaching train in time to avoid injury, it will be presumed in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw, such conduct is negligence *per se.*" *Cincinnati, etc., R. R. Co.* v. *Duncan, supra; Ohio, etc., R. W. Co.* v. *Hill, supra;* Beach, Contrib. Neg. (2d ed.), sections 180, 181 and cases cited.

It appears affirmatively that the appellee did not look, except once, toward the depot, before entering upon the crossing, and that he did not see the engine and cars until they were within one or two feet of the team, at which time he attempted to jump out of the cutter, and it does not appear that before entering upon the crossing he listened at any time for an approaching train, nor does it appear that listening would have availed anything. Taking these facts in connection with the further facts that the appellee was familiar with the crossing and its surroundings, that he knew when approaching the crossing the time of the arrival of a local freight train from the north, that he knew the train had arrived, a part of which, without the engine, he saw standing at the depot, we cannot say that he exercised that care and prudence

which the law of this State exacts of one approaching a railroad crossing.

Disregarding the finding of the jury that the appellee did nothing in approaching the crossing to prevent an accident, we are still unable to conclude from the special finding that the appellee did all that a reasonably prudent man would be expected to do under the circumstances. In the very able brief presented by counsel for the appellee it is insisted that as the appellee was the guest of the driver he did all that a man would do ordinarily, when he said to the driver, "you better hold up, there might be a train." There is nothing to show that the driver knew that any train was near. But the appellee knew, when he spoke to the driver, that the train had arrived at the depot from the north, that the engine had been detached from the train, and that a part of the train without the engine was then standing at the depot. With no further communication with the driver and without looking to the right or left he braced his feet to spring out if he should see any danger, and looking straight ahead rode until the engine and car were within one or two feet of the team. While it is said that the act of the appellee in bracing his feet to jump from the cutter if danger appeared, was an effort on his part to avoid injury, yet it can be said with equal propriety that by such conduct he realized the presence of danger, and without taking any precautions concluded to take the risk. Had the appellee looked southward, when within 30 feet of the nearest rail, he would have had an unobstructed view of the side-track a distance of 60 feet from the center of the street. It must be presumed that he knew this fact for the finding shows he was familiar with the crossing and its surroundings. "When it is said that a person approaching a railroad crossing must look and listen

attentively for approaching trains, it is not to be understood that he may look from a given point, and then close his eyes; but it is to be understood that he must exercise such care as a reasonably prudent person, in the presence of such a danger, would exercise to avoid injury.

"The courts cannot close their eyes to matters of general notoriety, and to matters of every-day observation." *Mann* v. *Belt, etc., R. R. Co.,* 128 Ind. 138.

It is argued that the appellee was under no obligation to look to the south, as he was on the north side of the cutter, and in support of this, counsel cite *Cincinnati, etc., R. W. Co.* v. *Grames,* 8 Ind. App. 112. But in that case the brother of the appellee, who was driving the team, spoke to the appellee, directing him to keep a watch on the north side while he looked and listened for engines and cars on the south side. The driver and the appellee in that case were making mutual arrangements for their joint protection. While in this case it appears the driver did not look at all, nor did he request the appellee to look. No excuse is given for his failure to look both ways as he approached the crossing. He was familiar with the crossing and the surroundings, and was bound to use more care than if he had not previously known it. In the case of *Cincinnati, etc., R. W. Co.* v. *Grames,* 136 Ind. 39, it is said: "In approaching a crossing, the law requires that the traveler shall listen for signals, must take notice of the signs put up as warnings, must look attentively up and down the track, if the surroundings are such as to admit of this precaution, and he must not attempt to cross in front of a moving train.

"If he neglects these precautions, and by reason of such negligence is injured, the court will adjudge,

as a matter of law, that he has been guilty of contributory negligence."

The failure on appellee's part, under the circumstances, to vigilantly use his senses of sight and hearing to ascertain whether a train was approaching, was a neglect on his part to use such precaution as the law of this State requires. When within thirty feet of the crossing, he had an unobstructed view of the sidetrack, looking south a distance of 60 feet, which increased as he approached the track to 80 feet, at 20 feet from the track. He could have seen if he had looked. The burden was on him to show that he listened for an approaching train, or that listening would have availed nothing. This he has failed to do. We think the conclusion necessarily follows from the finding that the appellee was injured because he neglected these precautions which the law required of him, and by reason of that neglect "the court will adjudge, as a matter of law, that he was guilty of contributory negligence."

We think the verdict is insufficient to support the judgment rendered in favor of the appellee, and that the appellee was guilty of negligence which contributed to his injury.

Judgment reversed with instructions to sustain appellant's motion for a judgment in its favor.