---

## LAKE ERIE AND WESTERN RAILROAD COMPANY *v.* GRAVER.

[No. 2,973.   Filed January 12, 1900.]

VERDICT.—*Special Finding.—Conflict.*—The general verdict must stand as against the facts specially found, unless such facts are in irreconcilable conflict with the general verdict.   *p. 683.*

NEGLIGENCE.—*Railroads.—Statutory Signals.*—Answers to interrogatories in an action for an injury at a railroad and highway crossing by which the jury found that the bell upon the locomotive was not rung continuously from a point not less than eighty nor more than one hundred rods from the crossing until such engine had fully passed the crossing, shows negligence *per se* on the part of the railroad company.   *p. 684.*

VERDICT.—*Special Finding.—Conflict.*—Where the jury in answer to an interrogatory in an action against a railroad company for an injury at a railroad and highway crossing stated that the failure of defendant to sound the whistle and ring the bell might have been the proximate cause of the plaintiff's injury, and in answer to

other interrogatories found that defendant did sound the whistle, such findings do not establish the fact that the failure to ring the bell was the proximate cause of the injury, but leave the fact established by the general verdict that such failure was the proximate cause of the injury unimpeached.   *p. 684.*

NEGLIGENCE.—*Railroads.—Injury at Crossing.—Interrogatories to Jury.—Conflict with General Verdict.*—Answers to interrogatories in an action by plaintiff for injuries received at a railroad and highway crossing by being struck by a train, to the effect that plaintiff was approaching the crossing, which he knew to be extraordinarily dangerous, traveling in a farm wagon, and at several points from about 300 feet from the crossing he could have seen the track and approaching train, which he knew was about due, by looking through between rows of trees in an orchard; that when he got within thirty-five feet of the crossing he could have had an unobstructed view of the track for 300 feet in the direction of the approaching train, and could have heard the noise of the approaching train, show plaintiff to have been guilty of contributory negligence, and are in irreconcilable conflict with a general verdict for plaintiff.   *pp. 684-690.*

From the Henry Circuit Court.   *Reversed.*

*John B. Cockrum, John L. Rupe, E. H. Bundy, W. E. Hackedorn* and *W. A. Brown,* for appellant.

*Thomas J. Study,* for appellee.

WILEY, C. J.—Appellee sued appellant to recover damages for injuries received by being struck by appellant's train while crossing a public highway. The complaint is in one paragraph, and it is shown that the injury occurred a little more than half a mile north of Dublin, in Wayne county, Indiana. The acts of negligence charged are that the train was running at a high and dangerous rate of speed; that the servants in charge of the train failed to sound the whistle not less than eighty nor more than 100 rods from the crossing, and failed to ring the bell continuously until the crossing was reached. The complaint avers that appellee was without fault. A demurrer to the complaint was overruled, and the issue was joined by an answer in denial. A trial by jury resulted in a general verdict for appellee. With the general verdict the jury found

specially as to certain facts, by answers to interrogatories. Appellant's motion for judgment on the answers to interrogatories, notwithstanding the general verdict, was overruled. The overruling of the demurrer to the complaint, and the motion for judgment, are assigned as errors.

As we believe that the rights of the parties must be determined by the facts specially found, we do not deem it necessary to consider the question of the sufficiency of the complaint. The facts specially found by the answers to interrogatories, in so far as their controlling influence is concerned upon the motion for judgment, are as follows: The highway upon which appellee was traveling runs north and south. Appellant's railroad, where it intersects the highway, runs in a northwestern and southeastern direction, and the two intersect at an angle of about forty-five degrees. At a point in the highway, 105 feet south of the center of the crossing, appellee could not see appellant's track at a greater distance than 166 feet south of the crossing. At a point in the highway thirty-five feet south of the crossing, appellee could not see the track, nor a train thereon, at a greater distance than 300 feet. Appellee, and one Hudelson, who was with him in the wagon, did not look and listen for the train as they passed the line between the house and orchard, about 300 feet south of the crossing. They began to look and listen about half way down the orchard, and continued until the train appeared from behind the obstructions. When they did see it, it was so close to them that appellee could not extricate himself, team, and wagon from the danger of collision, or prevent it. Appellee's view of the railroad and the approaching train was almost obscured from a point where he came on the highway, to a point within 105 feet of the crossing by apple and other trees, farmhouses, buildings, and fences, except when looking between the rows of trees; appellee's view of the railroad, at a point 105 feet south of the crossing, was obscured by apple trees on the north line of the orchard from a point 166 feet south of the cross-

ing.  The view of the railroad extended south as appellee
proceeded, not exceeding 300 feet, at a distance thirty-five
feet south of the crossing.  The servants in charge of appel-
lant's train sounded the whistle at a point not less than eighty
nor more than 100 rods south of the crossing, but did not
ring the bell continuously; if the bell had been rung, appel-
lee could have heard it; the failure to ring the bell contin-
uously from a point not less than eighty nor more than 100
rods, as the train approached the crossing, might have been
the proximate cause of appellee's injury.  The appellee did
not hear or see the train in time to have avoided the injury
by the exercise of reasonable care and diligence.  At the
time of the accident appellee was well acquainted and
entirely familiar with the country and place where the
injury occurred, and was acquainted with all the surround-
ings.  At the time of the accident, appellee was in full pos-
session of all his faculties, and his sight and hearing were
unimpaired.  Appellee entered the highway through a gate
about 500 feet south of the crossing.  He was driving a
team of horses attached to a farm wagon with a hay-rack
and rigging thereon, and drove along such highway and
upon the crossing without stopping.  The team he was driv-
ing was gentle and easily controlled.  Appellee was driving
and controlling the team.  The train that struck appellee
was running about thirty-two miles per hour.  Appellee was
traveling about three miles per hour.  Appellee neither
slackened nor varied the speed of his team from the time he
entered upon the highway until he was struck.  Appellee
and his hired man were alone on the wagon.  As they drove
along the highway they were talking together as to whether
the train had passed.  Appellee knew a regular passenger
train was about due and liable to pass over the crossing
at any time.  The train that struck appellee (a regular pas-
senger train) was substantially on time.  The train was
composed of a locomotive weighing about thirty-five tons,
a baggage car and coaches.  Appellant's track was opposite

and north of the point where appellee came upon the high-way, and the track toward the crossing came nearer the highway from such point to the crossing. The ground between the highway and the railroad from the point where appellee came into the highway was in the form of a triangle, with, the sharp angle at the point of intersection. Appellee could not have heard the noise of the train 100 feet south of the crossing if he had listened attentively, because the train was too far away. Appellee did not at any time after coming upon the highway stop and listen for the approaching train. Appellee had at intervals a view of the railroad track as he approached the crossing, by looking between the rows of trees in the orchard. The south side of the orchard was 300 feet from the crossing. There was a triangular piece of ground 105 feet south of the crossing along the highway, with its south line 116 feet from the highway to the track, and crossing to a point at the crossing, upon which there was no obstruction to the view of the track by a person on the highway, except an ordinary barbed wire fence along the right of way; that appellee, if he had looked attentively before going on the crossing from a point thirty-five feet from the center of the crossing, would have had a clear view of appellant's track to the southeast, the direction from which the train was coming, for the distance of 300 feet or more. If appellee had stopped and looked in the direction from which the train was coming, at a point twenty feet south of the crossing, he could have seen the approaching train; if he had stopped and listened within thirty feet of the crossing, appellee could have heard the noise of the train. The crossing was an extraordinarily dangerous one, as to trains coming from the south. From the point where appellee came upon the highway to a point 105 feet south of the crossing, the highway was substantially level. The crossing was about four feet lower than at a point 105 feet south, and the grade gradually descended from such point. The highway was on higher ground than the railroad track.

From a point 300 feet south of the crossing, and from there to the crossing, the view of appellant's track and approaching train was not so obstructed by trees as to prevent a person riding in a wagon from seeing a train approaching from the south, if such train was directly east.

By the general verdict, the jury found that appellee established by a preponderance of the evidence every fact essential to his right to recover under the allegations of his complaint. To state it more pointedly, by the general verdict the jury found the three concurrent propositions that must exist before liability in such case arises: (1) Negligence on the part of appellant; (2) that such negligence was the proximate cause of the injury complained of; (3) that appellee's negligence did not contribute to his injury. That these three elements must exist before liability attaches, see *Baltimore, etc., R. Co.* v. *Young*, 146 Ind. 374.

The general verdict must stand, as against the facts specially found, unless such facts affirmatively show that one or more of the necessary elements established by the general verdict does not exist, or is untrue. If the facts specially found show that appellant's negligence was not the proximate cause of appellee's injury, or that appellee's own negligence contributed to his injury, then, in either event, such facts would be in irreconcilable conflict with the general verdict, and would control, for, both by statute and repeated judicial decisions, where "the special finding of facts is inconsistent with the general verdict, the former shall control the latter, and the court shall give judgment accordingly." Section 547 Horner 1897; *Rogers* v. *City of Bloomington*, 22 Ind. App. 601, and authorities there cited; *Fitzmaurice* v. *Puterbaugh*, 17 Ind. App. 318; *Bachman* v. *Cooper*, 20 Ind. App. 173; *Rouyer* v. *Miller*, 16 Ind. App. 519; *Ohio, etc., R. Co.* v. *Heaton*, 137 Ind. 1. The conflict between the general verdict and facts specially found must be so marked that they cannot be reconciled upon any supposable facts provable under the issues, for we

must indulge all reasonable presumptions in favor of the general verdict, and cannot presume anything in favor of the special findings. *Louisville, etc., R. Co. v. Creek*, 130 Ind. 139, 14 L. R. A. 733; *Shuck v. State*, 136 Ind. 33; *Lake Erie, etc., R. Co. v. McHenry*, 10 Ind. App. 525; *Keeley, etc., Co. v. Parnin*, 13 Ind. App. 588.

It is clear that the answers to the interrogatories are in harmony with the general verdict, in so far as the negligence of the appellant is concerned, for the jury specifically found that the bell upon the locomotive was not rung continuously from a point not less than eighty nor more than 100 rods from the crossing, until such engine had fully passed the crossing. This the statute, §5307 Burns 1894, §4020 Horner 1897, lays upon the railroad as a duty, and a failure to perform such duty is negligence *per se*. *Louisville, etc., R. Co. v. Williams*, 20 Ind. App. 576; *Baltimore, etc., R. Co. v. Conoyer*, 149 Ind. 524; *Pittsburgh, etc., R. Co. v. Shaw*, 15 Ind. App. 173. And we can not say that there is any conflict between the general verdict and the answers to interrogatories on the proposition that appellant's negligence was the proximate cause of appellee's injury. Question ten propounded to the jury, and the answer thereto, are as follows: "Was not the failure of the defendant's employes * * * to sound the whistle not less than 100 rods from the crossing, and to ring the bell continuously from that point to the crossing the '*approximate*' cause of the plaintiff's injury?" Answer. "It might have been." By answers to other interrogatories, it was found that the whistle was sounded, so that we must take the answer to question ten as having reference to the failure of appellant to ring the bell. We cannot regard the answer as establishing the fact that the failure to ring the bell was the proximate cause of appellee's injury, for the answer, at most, is evasive and negative, and does not establish any fact. So that the fact established by the general verdict, that such failure was the proximate cause of the injury, must

remain unimpeached by any fact established by the special finding of facts.

This leaves but one question for consideration, and that is, do the facts found show that appellee was guilty of negligence contributing to his injury? We may very easily determine this question by a reference to a few pertinent and salient facts, as they are made to appear by the answers to interrogatories. Appellant was well acquainted with the crossing and surrounding country; he was in full possession of his faculties; his eyesight and hearing were unimpaired; he was traveling on a public highway, in a farm wagon, on which was a hay-rack and rigging, approaching and intending to cross appellant's railroad track where it intersected the highway; the crossing he was approaching was extraordinarily dangerous from trains approaching from the south; he knew that a regular passenger train was about due, if it had not already passed; as he approached the crossing he was talking with his servant about the train; from the time he entered upon the highway, about 500 feet from the crossing, he was driving about three miles per hour, and did not stop at any time to "look and listen"; at several points. from about 300 feet from the crossing he could have seen appellant's track and approaching train by looking between the rows of trees between the highway and the track; when he got within thirty-five feet of the track, if he had looked in the direction from which the train was coming, he would have had an unobstructed view along the track in such direction 300 feet; appellee did not slacken the speed of his team or vary its rate of speed from the time he entered the highway until he drove on the track and was struck by the train; he was approaching a crossing where the railroad crossed the highway at an angle of about forty-five degrees; if appellee had stopped and looked down the track from the direction from which the train was coming, at a point in the highway twenty feet from the track, he could have seen the approaching train; if he had stopped and listened

at a point thirty-five feet from the track, he could "have heard the noise and discerned the train approaching;" the train was running about thirty-two miles per hour. This succinct statement of the material facts found is sufficient upon which to apply the law and determine the question of appellee's negligence or non-negligence. Taking the answer of the jury to the question inquiring of them the rate of speed the train was running, we find that it was going thirty-two miles per hour. At a point thirty-five feet from the track, appellee, if he had stopped and listened, could have heard the noise and discerned the approaching train. From the same point he could, if he had looked, have seen down the track from the direction from which the train was coming, a distance of 300 feet or more. At a point twenty feet from the track, if appellee had looked in the direction of the train, he could have seen it approaching. He was driving about three miles per hour, and had a gentle team that was easily controlled. If appellee was driving only three miles an hour, his team must have been going in a slow walk. At the rate of three miles an hour, he would go a distance of about four feet in a second. At a distance of thirty-five feet from the track, it would take him, in round numbers, eight seconds to reach the track. When he was thirty-five feet from the track, it took the train the same length of time to reach the crossing that it did him, for the train and wagon collided at the crossing. As the train was running at the rate of thirty-two miles an hour, by a simple mathematical calculation it is found that when appellee was thirty-five feet from the crossing, the train was 400 feet from the same point, for, at the rate of thirty-two miles an hour, it would run fifty feet in a second. As the jury find, as a fact, that appellee could have heard the noise of and discerned the approaching train, if he had stopped and listened, it must necessarily follow that if he had done so he had ample time to have avoided the collision. At a point twenty feet from the crossing he could have seen the train

approaching.   At a distance of twenty feet from the cross-
ing, at the rate appellee was traveling, it would take him
five seconds to reach it, and as appellee and the train reached
the crossing at the same time, the train was 250 feet from
the crossing when appellee was twenty feet from it, and
hence it would have been in plain and full view of him
if he had looked toward it when he was twenty feet from
the track.   If the facts so found constitute negligence on the
part of appellee,·then they are in irreconcilable conflict with
the general verdict, and appellant's motion for judgment
should have been sustained.   A brief review of the authori-
ties will suffice to determine this question.   While there
may be some confusion on the law of negligence, as de-
clared by the adjudicated cases in this State, it seems to us
that, as to the particular question now before us, the authori-
ties in this jurisdiction are in harmony.   Early in this State
it was declared to be the rule that "when a person crossing
a railroad track is injured by collision with a train, the
fault is, *prima facie*, his own, and he must show affirma-
tively, that his fault or negligence did not contribute to the
injury, before he is entitled to recover for such injury."
*Hathaway* v. *Railroad Co.*, 46 Ind. 25.   And to this rule
the courts of last resort in this State have uniformly adhered.
*Cincinnati, etc., R. Co.* v. *Butler*, 103 Ind. 31; *Lake Erie,
etc., R. Co.* v. *Stick*, 143 Ind. 449; *Cincinnati, etc., R. Co.*
v. *Duncan*, 143 Ind. 524; *Smith* v. *Wabash R. Co.*, 141
Ind. 92; *Shirk* v. *Wabash R. Co.*, 14 Ind. App. 126; *Lake
Shore, etc., R. Co.* v. *Boyts*, 16 Ind. App. 640; *Aurelius*
v. *Lake Erie, etc., R. Co.*, 19 Ind. App. 584.

The fact that there were some obstructions which par-
tially obstructed the view imposed upon appellee the duty
of increased care in the use of his senses of sight and hearing.
Beach Cont. Neg. (2nd ed.), §183.   *Lake Shore, etc., R. Co.*
v. *Boyts, supra;  Towers* v. *Lake Erie, etc., R. Co.*, 18 Ind.
App. 684; *Aurelius* v. *Lake Erie, etc., R. Co., supra.*   As
was said in the latter case:   "A person when in a place, or

while approaching a place of danger, must use care and caution commensurate to such danger; and where one approaches a point where a highway crosses a railroad track on the same level, it is his duty to proceed with caution, and, if he attempts to cross the track, either on foot or in a vehicle, he must use ordinary care, under the circumstances, in so doing. He must assume that there is danger, and act with ordinary care and prudence upon that assumption." As was said by Monks, J., in *Smith* v. *Wabash R. Co.*, 141 Ind. 92: "The question of care at railway crossings as affecting the traveler, is no longer, as a rule, a question for the jury. The *quantum* of care in a large class of cases is exactly prescribed as a matter of law. In attempting to cross, the traveler must listen for signals, notice signs put up as warnings, and look attentively both ways for approaching trains, if the surroundings are such as to admit of that precaution. If a traveler by looking could have seen an approaching train in time to avoid injury, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw, such conduct is negligence *per se.*" See, also, *Cincinnati, etc., R. Co.* v. *Duncan*, 143 Ind. 524; *Ohio, etc., R. Co.* v. *Hill*, 117 Ind. 56; Beach Cont. Neg. (2nd ed.), §§180, 181, and cases cited; *Lake Shore, etc., R. Co.* v. *Boyts*, 16 Ind. App. 640; *Towers* v. *Lake Erie, etc., R. Co.*, 18 Ind. App. 684.

The facts that it was time for a train to pass the crossing, that appellee was familiar with the surroundings, and was anticipating danger, were sufficient to warn him. The language of Monks, J., in *Smith* v. *Wabash R. Co.*, 141 Ind. 92, applies with significant force here, and the facts in the case before us bring it squarely within the rule there announced. At a safe distance from the crossing, appellee could have both heard and seen the approaching train, if he had stopped and listened, or had looked, and we must presume that he did not look, or that, if he did look, he did not heed what he saw. Under the authorities, such conduct was

negligence *per se.* In *Lake Shore, etc., R. Co.* v. *Boyts,* 16 Ind. App. 640, if appellee had looked southward when within thirty feet of the nearest rail as he approached the crossing, he could have had an unobstructed view of the side-track, upon which a freight train was backing, for a distance of sixty feet. His failure so to look was held to be negligence that would bar his right to recover. In *Mann* v. *Belt R. Co.,* 128 Ind. 138, the court said: "When it is said that a person approaching a railroad crossing must look and listen attentively for approaching trains, it is not to be understood that he may look from a given point, and then close his eyes; but it is to be understood that he must exercise such care as a reasonably prudent person, in the presence of such danger, would exercise to avoid injury." This means that a person approaching a railroad crossing, in order to avoid injury, must exercise continuing care and caution until the danger is past. In *Cadwallader* v. *Louisville, etc., R. Co.,* 128 Ind. 518, appellant was approaching a railroad crossing. Within twenty feet of the crossing she had an unobstructed view of the railroad track for 100 feet; and when within ten feet of the track she had such view of the track for 300 feet, and could have seen the approaching train before going upon the track, if she had looked. She did not look, but heedlessly stepped upon the track in front of a moving train, and was injured. Upon these facts, it was held she could not recover on account of her own negligence. As to what duty is required of a person about to cross a railroad track, while traveling upon a public highway, we cite the following cases: *Smith* v. *Wabash R. Co.,* 141 Ind. 92; *Oleson* v. *Lake Shore, etc., R. Co.,* 143 Ind. 411, 32 L. R. A. 149; *Lake Shore, etc., R. Co.* v. *Boyts,* 16 Ind. App. 640; *Aurelius* v. *Lake Erie., etc., R. Co.,* 19 Ind. App. 584; *Louisville, etc., R. Co.* v. *Stommel,* 126 Ind. 35; *Cincinnati, etc., R. Co.* v. *Duncan,* 143 Ind. 524. What was said in the case last cited applies with great force to the facts here found. The court said: "Some of our cases hold that, where

from any cause the crossing is more than ordinarily danger-
ous, it is the duty of one nearing the same to stop and listen
for the sound that ordinarily follows a moving train. *Louis-
ville, etc., R. Co.* v. *Stommel, supra.* The discharge of this
duty was not proved. But it is contended that obstructions
to the view eastward excused this duty. But the evidence
does not show that the obstructions were so great as to shut
out all sight. And if they had been complete, that fact
imposed the duty of increased care in the use of the sense of
hearing, and to that end he should have stopped and atten-
tively listened. And had he done so, he must have heard
* * * the noise of the running train. This the law
required him to do under the circumstances."

There is no pretense that appellee, when within twenty
feet of the track, looked in the direction from which the
train was coming, or that he stopped and listened atten-
tively within thirty-five feet of the track, when he could
have heard the noise of the train. It being his duty both
to look and listen, as settled by all the authorities, the facts
specially found upon these questions are in irreconcilable
conflict with the general verdict, as to the question of
appellee's negligence, and cannot be harmonized with the
general verdict upon any supposable state of facts provable
under the issues. The appellant was entitled to judgment
upon the answers to interrogatories, and the overruling of its
motion therefor was error. The judgment is reversed, and
the court below is directed to sustain appellant's motion for
judgment upon the answers to interrogatories, notwithstand-
ing the general verdict, and render judgment accordingly.