JOHN C. HARRINGTON *v.* RUTLAND RAILROAD CO.

Special Term at Rutland, November, 1914.

Present: POWERS, C. J., MUNSON, WATSON, HASELTON, and TAYLOR, JJ.

Opinion filed May 15, 1915.

*Motion for Judgment Non Obstante—Nature and Effect—General and Special Verdicts—What Judgment Should be Rendered Thereon—Railroad Crossings—Duty of Traveler —Vigilant Use of Senses—Contributory Negligence as Matter of Law—Evidence—Legal Effect of—Purpose and Effect of a Jury View.*

A motion for judgment *non obstante veredicto* raises a question of pleading and is, ordinarily, a plaintiff's motion.

Where, in accordance with P. S. 1583, a special verdict is taken, it is the duty of the court to render the proper judgment on the facts found; and, if the undisputed facts and those established by the special verdict defeat plaintiff, judgment should be for defendant, notwithstanding a general verdict for plaintiff.

A judgment is never arrested for matters outside the record, and so, where there is a general verdict for plaintiff and also a special verdict, defendant's motion in arrest of judgment of the general verdict for that it is contrary to the special verdict and, on the facts established by the special verdict, and under the charge of the court, the general verdict is not warranted, is not tenable as a motion in arrest of judgment.

It is the duty of a traveler nearing a railroad-highway crossing at grade to look and listen for approaching trains, and to stop to listen, if that is necessary to enable him to listen effectively, and to continue to look and listen until the last moment that the discovery of an approaching train will avail for his protection; and he is chargeable with such knowledge of the approach of trains as would be revealed by such vigilant use of his senses as a prudent man would make in the circumstances.

Where a traveler is injured by collision with a train at a railroad-highway crossing at grade, and by the vigilant use of his sight and hearing might have avoided the danger, he is guilty of contributory negligence.

In an action against a railroad company for injuries to plaintiff by collision with a northbound train at a railroad-highway crossing at grade, whereon plaintiff drove from the east, where there was a general verdict for plaintiff, and also a special verdict, but the undisputed evidence in connection with the special verdict showed that at a point 90 feet from the crossing plaintiff, whose eyesight and hearing were good, had a clear view of the railroad tracks south for at least 500 feet from the crossing, and that, as he approached the crossing, his range of vision towards the south increased rapidly, so that at a point 78 feet from the crossing he could see the tracks south of the crossing for a distance of at least 1000 feet therefrom; that he was driving a gentle horse at a speed of not to exceed two and one-half miles an hour, and the speed of the approaching train, as it neared the crossing and thence till the accident, which occurred just as the horse reached the east rail, was about 20 miles an hour, plaintiff was guilty of contributory negligence, as matter of law, notwithstanding his testimony that he approached the crossing looking and listening attentively, and that he continued to look and listen as he drove onto the crossing, seeing and hearing nothing, and so defendant's motion for judgment on the special verdict should have been granted.

In an action against a railroad company for injury to a traveler on a railroad-highway crossing at grade by a northbound train, consisting of a locomotive and four cars, in viewing the evidence in the light most favorable to plaintiff it must be taken on review that the train approached the crossing at a speed of about 20 miles an hour, before the emergency brake was applied, as defendant's evidence tended to show, where the only evidence to the contrary was the testimony of plaintiff that the train "was coming pretty fast" at the time it struck him, and that of another witness that at a point some distance south of the crossing the train "was going a pretty good speed," and the uncontradicted evidence was that the train came to a stop in going its length after the accident and in going twice its length after the emergency brake was applied.

The purpose of a view by a jury of the *locus* in question is, not to make evidence, but to enable them the better to understand the evidence adduced in court, and so where all the evidence sent up, on review of the denial of defendant's motion for judgment in a case where there was a jury view, this Court will not, in support of the judgment below, conjecture that the jury may have seen

something not disclosed by the evidence, but will rule upon the effect of the evidence as if no view had been taken.

CASE for negligence. Plea, the general issue. Trial by jury at the September Term, 1913, Rutland County, *Fish*, J., presiding. At the close of all the evidence, the defendant moved for a directed verdict on the grounds stated in the opinion. Motion denied, to which defendant excepted. General verdict for the plaintiff and the special verdict recited in the opinion. After return of the verdicts defendant filed the motions recited in the opinion, which were denied and judgment rendered for the plaintiff on the general verdict, to all of which the defendant excepted. The opinion states the case.

*Edwin W. Lawrence* for the defendant.

*Charles L. Howe* and *E. H. O'Brien* for the plaintiff.

TAYLOR, J. The plaintiff was injured at the Park Street grade crossing of the Rutland Railroad in the city of Rutland on July 23, 1912, about 10:20 o'clock in the forenoon. The crossing in question is at the northwest corner of the Rutland Fair Ground. The Bennington Branch of the defendant's railroad crosses Park Street nearly at right angles. The railroad at that point is a straight line running practically north and south and to the south of the crossing is a straight line for about four miles. The railroad ascends a slight grade as it approaches the crossing from the south. Park Street in the vicinity of the crossing is a straight line running a little north of east and south of west. The grade of the street is slightly descending from the east toward the crossing, a total of 3.7 feet in 200 feet. On each side of the main line track as it crosses the highway is a side-track. The siding on the east extends southerly from the crossing about 730 feet and that on the west extends still farther south.

The view to the south as one proceeds toward the crossing from the east is obstructed for a distance by some buildings and a high board fence on the Fair Ground. The board fence ends at a point 78 feet east from the center of the main track. From that point west to the northwest corner of the Fair Ground, and thence southerly on the west line thereof for a considerable dis-

tance, the fence is of posts and wire and does not hinder the view.  But for cars that may be standing on the east siding, at a point 90 feet east along the center of Park Street from the center of the main line a person would have a clear view of the railroad tracks south for a distance of at least 500 feet from the center of the crossing.  As one approaches the crossing the range of vision increases rapidly.  At a point 78 feet from the crossing the tracks are visible for a distance of 1000 feet from the crossing. There is a platform east of the east side-track adjacent to the Fair Ground but not of sufficient height to obstruct the view of any one walking or riding along Park Street.  On the west side of the railroad and south side of Park Street is the Stewart Canning Factory, and the west side-track is employed in part as a loading track for this factory.

On the day in question there were three box cars standing on the west siding in front of the Stewart Factory and some other box and coal cars still farther south on that siding.  None of these cars interfered with the view of the main line south of the crossing.  There was a string of coal cars coupled together 354 feet long standing on the east siding in front of the Fair Ground platform.  The north end of the string was above 150 feet south of the center of the crossing.  The top of these cars was 8.4 feet above the rails.  They would only partially obstruct the view of a passenger train approaching the crossing from the south on the main track.  The train that collided with the plaintiff's team was a passenger train due at Rutland at 10:15 and running about ten minutes behind schedule time.  It consists of an engine, a baggage car, a mail car, a smoking car and a passenger coach.  The top of cab of the engine was 14 feet above the rails; the top of the dome, 14.4 feet; and the top of the stack 14.6 feet. The height of the mail car was 14 feet and of the other cars 13 feet and 7 inches.

The plaintiff testified that there was a box car standing on the east siding near the street and that the siding south was filled with coal cars.  The defendant's evidence showed to a demonstration that there was no box car on the east siding and that the coal cars stood as described above.  By a special verdict the jury found that the cars on the east siding were as the defendant claimed, both as to kind and location.

The plaintiff, a man 72 years old, was driving west along Park Street in an express wagon.  His head was about 5 feet 8

inches above the ground as he sat in the wagon. His hearing and eyesight were good. He had lived a short distance west of the crossing for four years and was familiar with the locality. He knew approximately when the passenger train was due. He testified that at a certain point on Park Street he looked at his watch and observed that it was after the time when the train should pass, and said he thought it might have gone past. The horse that the plaintiff was driving was gentle and there was nothing to show that the plaintiff's conduct was in any way influenced by the actions of the horse. As the team approached the crossing the horse was walking. The plaintiff testified that he was listening and looking, but that the cars on the east siding prevented his seeing a train approaching from the south; that just before he reached the east siding he stopped his horse to listen for an approaching train; that hearing nothing he started his horse walking; and that just as he started he looked up and caught sight of the engine just as it hit his horse. He testified that he listened for, but did not hear, any whistle or bell, and that the whistle did not blow nor the bell ring. It was a clear pleasant day and there was no wind. There was no evidence of any noises to interfere with his hearing.

The engineer testified that the usual crossing whistle was given at the whistling post 80 rods south of the crossing; that he immediately turned on the automatic bell-ringer; that the bell continued to ring until after the accident; that when the engine was 250 or 300 feet from the crossing he saw the plaintiff a short distance from the crossing "jogging along with his head down apparently paying no attention;" that thereupon he applied the emergency brake and gave the danger signal—several short blasts of the whistle; that plaintiff did not pay any attention to the danger signal at first but kept driving along, his head down; that when the engine was close to him plaintiff pulled on the reins and the horse reared and struck the engine just back of the forward drive wheels. The plaintiff testified in cross-examination that his horse had just passed the side-track onto the east rail when he caught sight of the approaching train; that he tried to pull the horse back, thinking if he could back him the train wouldn't hit him; that the engine struck so quick he couldn't tell whether the horse had yielded to his pulling. The conductor of the train, whose attention was attracted by the danger signal, and three other witnesses in the vicinity described the accident sub-

stantially as did the engineer. The undisputed evidence fairly tends to show that the horse had just reached the east rail when the collision occurred. Whether it reared when plaintiff pulled on the reins and came down onto the engine, or was struck by the front of the engine, is, in the circumstances, of little moment.

The defendant's evidence tended to show that the train was going about 20 miles an hour as it approached the crossing before the emergency brake was applied. When it stopped immediately after the accident, the rear end of the train was just over the crossing. The only evidence to the contrary was a statement by the plaintiff that "it (the train) was coming pretty fast" at the time it struck him, and the testimony of another witness that, at a point south of the Fair Ground, the train "was going pretty good speed." This evidence is of little force in view of the uncontradicted evidence that the train came to a stop in going its length after the accident and in going twice its length after the emergency brake was applied. It is reasonably certain that the speed of the train before the emergency brake was applied did not greatly exceed 20 miles per hour.

At the close of the evidence the defendant moved for a directed verdict on the ground that there was no evidence tending to show negligence on the part of the defendant and no evidence tending to show that plaintiff was free from contributory negligence. The motion was overruled, to which the defendant excepted. The court submitted the question of defendant's negligence as to the speed of the train and as to failure to give the crossing signals, and also the question of contributory negligence. The jury were directed to find by a special verdict concerning the kind and location of freight cars on the east side-track. The general verdict was for the plaintiff and the special verdict supported the defendant's claim as to the cars. After return of the verdicts, the defendant filed motions (1) that the general verdict be set aside because inconsistent with the facts found by the special verdict; (2) that judgment be rendered for the defendant for the reason that under the special verdict the defendant is entitled to judgment; (3) for the reason that, with the facts as found by the special verdict, the plaintiff was not free from contributory negligence; (4) for the reason that under the charge of the court, with the facts as found by the special verdict, the plaintiff is not entitled to recover; (5) on the ground that the general verdict is inconsistent with the special verdict

and therefore the special verdict must control and judgment must be entered for the defendant; (6) also that judgment on the general verdict be arrested for the reason that the same is contrary to the special verdict and that, under the facts found by the special verdict and under the charge of the court, the general verdict is not warranted. These motions were severally overruled, to which the defendant excepted.

We do not stop to consider the defendant's exceptions to the refusal of the court to direct a verdict in its favor, but pass to the questions raised by the motions after verdict.

These motions are not in the nature of a motion for judgment *non obstante veredicto,* which, under our practice, raises a question of pleading and is ordinarily a plaintiff's motion. *Davis* v. *Streeter,* 75 Vt. 214, 219, 54 Atl. 185. They challenge the general verdict and the right of the plaintiff to recover in view of the uncontradicted facts and the facts established by the special verdict. P. S. 1583 authorizes the taking of special verdicts in civil cases; and when taken it is the duty of the court to render the proper judgment upon the facts found. *Hogle* v. *Clark,* 46 Vt. 418; *Trustees Cal. Co. Gr. School* v. *Kent,* 86 Vt. 151, 84 Atl. 26. If the undisputed facts and those found by the special verdict defeat the plaintiff's right of recovery, the judgment should be for the defendant, notwithstanding the general verdict affirms the right of recovery in the plaintiff. *Hogle* v. *Clark, supra; Chicago &c. R. Co.* v. *Hedges,* 118 Ind. 5, 20 N. E. 530. In such case it is error to deny the defendant's motion for judgment. *Lake Erie &c. R. Co.* v. *Graver,* 23 Ind. App. 678, 55 N. E. 968; *Indiana Union Traction Co.* v. *Scribner,* 93 N. E. 1014.

The motion that judgment on the general verdict be arrested is not tenable as a motion in arrest of judgment. Judgment is never arrested for matters outside the record. *Trow* v. *Thomas,* 70 Vt. 580, 584, 41 Atl. 652. The question raised by the other motions for judgment resolves itself into want of care on the part of the plaintiff contributing to his injury.

The rule as to the degree of care for his own safety required of a traveler when approaching a railroad crossing the highway at grade is well settled in our cases. It was the duty of the plaintiff as he neared the crossing to look and listen for approaching trains, and, if necessary to enable him to listen effectively, to stop to listen. Duty required him to continue to look and

listen as he approached the track until the last moment when the discovery of the train would have availed for his protection. He was chargeable with such knowledge of the approach of the train as he might have obtained by such vigilant use of his senses as a careful and prudent man would make in the circumstances. If by the vigilant use of his sight and hearing, he might have discovered and avoided the danger and he omitted such vigilance, he was guilty of contributory negligence. *Flint's Admr.* v. *C. V. Ry. Co.*, 82 Vt. 269, 73 Atl. 590; *Shumm's Admrx.* v. *Rutland Railroad Co.*, 81 Vt. 186, 69 Atl. 945, 19 L. R. A. (N. S.) 973; *Wiley* v. *Rutland Railroad Co.*, 86 Vt. 504, 86 Atl. 808; *Carter* v. *C. V. Ry. Co.*, 72 Vt. 190, 47 Atl. 797; *Manley* v. *D. & H. Canal Co.*, 69 Vt. 101, 37 Atl. 279.

When the plaintiff reached the point 78 feet from the crossing where he had a clear view south along the track for at least 1000 feet, the approaching train must have been within his range of vision. Assuming that his rate of travel did not exceed 2½ miles per hour, or 3⅔ feet per second,—which gives him the benefit of any doubt,—and that the train maintained to the time of the accident a uniform speed of 20 miles per hour, or 29⅓ feet per second,—though of necessity it must have been less,— when he reached the point 78 feet from the crossing the train was 624 feet away and in full view. From that point on, as he approached the crossing, there was no time when he could not have seen the train, if he had looked, and no time when, in the circumstances, he could have failed to hear its approach, if he had listened attentively. Even after the train passed behind the coal cars on the east siding a considerable portion of the train was plainly visible. When he reached a point 24 feet from the east rail of the main track, and before his horse reached the east side-track, the train had come into full view from behind the coal cars nearly 200 feet from the point of collision. In these circumstances it is idle for the plaintiff to testify that he approached the crossing looking and listening attentively and that he continued to look and listen as he drove onto the crossing, seeing and hearing nothing, to warn him of the approaching train until the instant of the collision; for the circumstances established to a certainty disprove his testimony. The only satisfactory explanation of his conduct is failure to take reasonable notice of his surroundings.

On the undisputed facts in connection with the special verdict, plaintiff was clearly guilty of contributory negligence as a matter of law. There is a necessary inference from the facts and circumstances established that the plaintiff could have detected the approach of the train by the exercise of due care in season to have averted the accident. His testimony that he looked and listened and did not see or hear the train is of no probative force and will be disregarded, as the facts established show conclusively that if he looked he must have seen and if he listened he must have heard. *Labelle* v. *C. V. Ry. Co.*, 87 Vt. 87, 88 Atl. 517. He will be presumed to have seen whatever was in the range of his vision, if he looked, and to have heard whatever he might hear, if he listened. The collision took place practically at the moment the team reached the track. He had advanced at least 16 feet with the train in full view. There was nothing to distract his attention. The behavior of the horse did not contribute to the accident. His testimony that he stopped, looked and listened will not exonerate him; for, despite his protestations, the fact of the immediate collision proves conclusively that he did not exercise his senses with reasonable vigilance. *Labelle* v. *C. V. Ry. Co., supra; Flint's Admr.* v. *C. V. Ry. Co., supra.* It cannot be said that, if plaintiff had been attentive to what he could see and hear even after the train came into full view his prudence would have availed him nothing. He had ample time to stop his team at a safe distance from the track. See *Shumm's Admrx.* v. *Rutland Railroad, supra.* His failure to use reasonable vigilance to discover and avoid the danger defeats his right of recovery.

The fact that the jury viewed the premises does not affect the result. When all the evidence in the case is before us on a motion for judgment the Court will not conjecture that the jury may have seen something not disclosed in the evidence. The purpose of the jury view is not to make evidence, but to enable the jury the better to understand the evidence as it comes in. The court will rule upon the effect of the evidence as if no view had been taken. See *Shumm's Admrx.* v. *Rutland Railroad, supra; Tully* v. *Fitchburg R. Co.*, 134 Mass. 499; *Rigg* v. *Boston &c. R. Co.*, 158 Mass. 309, 33 N. E. 512.

*Judgment reversed and judgment for the defendant.*